# CHARLESTON.

W. P. BOWLING, RECEIVER, ETC. v. THE CONTINENTAL INSURANCE CO.

Submitted March 30, 1920.    Decided April 13, 1920.

1. INSURANCE—*Policy Filed With Declaration in Statutory Form Becomes Part of Pleading.*

   Where a declaration in an action to recover the amount of an insurance policy follows the form prescribed therefor by statute, the policy, if filed therewith, becomes part of the pleading for the purposes of the suit. (p. 166).

2. SAME—*Appointment of Receiver Who Takes Possession is not a "Change of Title or Possession" Within Forfeiture Clause.*

   Where a fire insurance policy provides that if any change takes place "in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment, or by the voluntary act of the insured, or otherwise," the policy shall be void, the judicial appointment of a receiver to administer the property, who takes actual possession of it, does not constitute a change of title or possession within the meaning of the forfeiture clause. In so far as the case of *Bronson* v. *New York Fire Insurance Co.,* 64 W. Va. 494, asserts a contrary doctrine it is overruled. (p. 167).

3. SAME—*Provision Avoiding Policy on "Change of Title or Possession" Refers to Change in Lawful Right of Possession.*

   The change of possession contemplated by a provision of this character is a change in the lawful right of possession as dis-

tinguished, from mere occupancy, and refers to the insured's possessory right rather than to his physical occupancy of the premises. Changes of occupants without increase of hazard are expressly excepted by the policy. (p. 167).

4. RECEIVERS—*Title to Property Remains in the Owner.*

Where a receiver acting under judicial appointment and direction takes possession of property intrusted to his care and management, his custody is more that of a temporary occupant or caretaker representing the court, whose officer he is, than of one entitled as of right to the possession. The title and beneficial right remain in the owner. (p. 170).

5. INSURANCE—*Whether Receiver's Control Increased Hazard Within Policy Held Question of Fact.*

Whether the change of occupancy resulting from the receiver's assumption of control has increased the hazard is a question of fact to be determined in each case. (p. 170).

6. SAME—*Forfeiture Clause Should be Construed Most Favorably to Insured.*

If the language of a forfeiture clause in an insurance policy is susceptible of two constructions, the one more favorable to the insured is to be adopted. (p. 170).

7. CORPORATIONS—*Whether Reorganization Continues Original Corporation or Creates New Corporation Depends on Statute and Proceedings.*

Whether the reorganization of a corporation with the same ownership and management has the effect of creating a new and distinct corporate body, or merely continues the existence of the original company under a new name, but without change of identity, depends upon the terms of the statute under which the reorganization is effected, the provisions of the old and new charters, and the character of the proceedings attendant upon the reorganization. (p. 171).

8 INSURANCE—*Transfer of Assets to Reorganized Corporation is "Change of Title" Within Forfeiture Clause.*

If a new and different corporate entity is created by the reorganization, the transfer of assets from the original to the new company, without the consent of the insurer, is a change of title within the meaning of the forfeiture clause of the policy. (p. 171).

Certified Questions from Circuit Court, Summers County.
Action by W. P. Bowling, receiver, etc., against the Continen-

tal Insurance Company.    Demurrer to declaration overruled,
and question certified.

*Reversed and demurrer sustained.*

*Thos N. Read* and *R. F. Dunlap,* for plaintiff.
*Morton & Mohler,* for defendant.

LYNCH, JUDGE:

The declaration held sufficient on demurrer and certified here
substantially presents the following case for adjudication:    The
Hinton Hardware Company, a corporation engaged in a whole-
sale and retail hardware business in the City of Hinton, pro-
cured from defendant February 8, 1915, a three-year policy of
insurance against damage or destruction by fire on a two-story
metal roof frame building in Hinton in which it conducted such
business.    Sometime in the month of August of that year the di-
rectors and stockholders decided to and by a resolution did effect
a reorganization of the Hinton Hardware Company under
the name of the New River Hardware Company, for which pur-
pose they obtained in the regular way a new charter and reor-
ganized and thereafter transacted the same character of business
carried on by them or for their use and benefit under the former
corporate name.    The Hinton Hardware Company, in consid-
eration of the assumption of its indebtedness by the reorganized
company, transferred to the latter its assets, including the in-
sured building, the stockholders and their respective shares and
interests in the old and new companies being identical in every
particular.    On April 21, 1917, about ten months before the
expiration date of the insurance policy, the circuit court of Sum-
mers County appointed W. P. Bowling receiver of the assets and
business of the New River Hardware Company, and Bowling
qualified and entered upon the discharge of the duties incident
to such office, and took into his possession the stock of hard-
ware wihin the building and necessarily the building itself, and
as such sued to recover the amount of the policy, the building
having been totally destroyed by fire three days before the ex-
piration of the three-year insurance term.

The ground of challenge against the sufficiency of the declara-
tion is the avoidance of the policy, which follows the usual
standard form, by reason of the reorganization of the corpora-

tion for whose security against loss or damage the policy was purchased and in whose name it was procured and written, and the change wrought in the possession of the property insured as effected by the judicial appointment of plaintiff as such receiver, both, according to the claims of defendant, having been effected contrary to the express terms of the policy and without the consent of the insurer in writing first obtained. As the declaration follows the form prescribed by statute for cases of this sort (section 61, ch. 125, Code 1918), the contract of insurance, when filed therewith, becomes part of the pleading for the purposes of the suit. *Staats* v. *Georgia Home Ins. Co.,* 57 W. Va. 571, 4 Ann. Cas. 541; *Hubbard* v. *Equitable Life Assurance Soc.,* 81 W. Va. 663, 667, 4 A. L. R. 886.

The provision of the policy relied on as the main ground of demurrer reads thus: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if any change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment, or by the voluntary act of the insured, or otherwise; or if this policy be assigned before a loss." Subject to these and other like and similar conditions the contract was made by defendant and accepted by Hinton Hardware Company according to the terms of the policy, and each of the parties thereto is bound and controlled by the terms, conditions and stipulations. The declaration apparently warrants the assumption that plaintiff took immediate, complete and exclusive possession and supervision of the assets of New River Hardware Company, including the building insured. If the change in the possession of the property thus wrought by him in the exercise of the powers so conferred contravened the express provision of the insurance contract, it is decisive of the issue.

One of the vital questions upon demurrer, therefore, is, Did plaintiff's possession and occupancy of the building effect the change forbidden by the policy and thereby excuse defendant from the liability conditionally imposed by the contract of insurance? Unless disapproved, the decision in *Bronson* v. *New York Fire Ins. Co.,* 64 W. Va. 494, 19 L. R. A. (N. S.) 643, 16

Ann. Cas. 868, is decisive of the question because of the similarity of the facts and circumstances of the two cases.   The syllabus furnishes a reasonably comprehensive statement of the extent and purport of the decision.   It reads:   "A fire insurance policy on personal property provides that if any change takes place in the interest, title or possession of the property, 'whether by legal process of (or) judgment, or otherwise,' the policy shall be wholly void.   The appointment of a receiver in a suit to take possession and control of the property, who takes actual possession of it, prevents recovery of loss under it."   That the character of the property insured was personalty in the one case and realty in the other is not material as each policy contains the same provision respecting possession.

A re-examination of the facts and circumstances of that case and the authorities cited in support of the argument on which the decision rests raises a serious doubt as to the correctness of the principles asserted by it.   It seems to be against the weight of authority and finds but little support anywhere.   Two cases directly in point because of the analogy of the facts involved are *Southern Pants Co.* v. *Rochester German Ins. Co.,* 159 N. C. 78, and *Lancashire Ins. Co.* v. *Boardman,* 58 Kans. 339.   These cases differ vitally from the Bronson case in principle and holding.   They assert the proposition, which we believe to be sound, that a receiver acting under appointment of a court, who takes and holds possession of property intrusted to his care and management, does not thereby effect such a change of possession as falls within the meaning of the forfeiture clause of fire insurance policies, but that the possession is that of the court through him as an officer, who holds it for the benefit of the parties interested in the result of the litigation, including the insured himself.   This is not a new doctrine.   As said in *City Bank of Wheeling* v. *Bryan,* 76 W. Va. 481, 483, L. R. A. 1915F, 1219: "A receiver is the officer of the court that appoints him, and derives all his authority from its decrees and orders, and is accountable to it alone for the faithful administration of his office. Immediately upon his appointment and qualification he is vested with the right to the possession and management of the assets to be administered.   This is especially so in the case of an insolvent corporation.   The property of which a receiver has

charge is in custodia legis.   His appointment and qualification is a sequestration of the property by the court, for the purpose of administering it for the best interests and protection of the rights of all persons interested in the estate.   His possession is the court possession, and he is subject only to its orders." See also *Thompson* v. *Phoenix Ins. Co.,* 136 U. S. 287, where it is said in the opinion:   "The title to property in the hands of a receiver is not in him, but in those for whose benefit he holds it. Nor in a legal sense is the property in his possession.   It is in the possession of the court, by him as its officer." Clearly, therefore, in a receivership proceeding the possession is that of the court through the receiver as its legal officer, who holds and administers the property under court orders and directions for the benfit of all persons who may have some legal claims or right to its preservation.

But even if the possession of the receiver be deemed that of the court, is it not such a change of possession as falls within the condemnation of the insurance policy?   Of course the safety and protection of the insurer is dependent to a large extent upon the character of the insured, not alone upon his integrity and good faith, but upon his habits of carefulness, prudence and vigilance.   The clause prohibiting a change in interest, title or possession was inserted in the policy for the purpose of avoiding the danger of possible carelessness.   But it is not every change of possession that falls within this prohibition.   The policy itself excepts those occurring as a result of the death of the insured, and likewise "changes of occupants without increase of hazard."   Thus there is disclosed an apparent purpose to attach to the word "possession" a broader significance than ordinarily inheres in the term "occupant" or "occupancy."   As said in *Marcello* v. *Concordia Fire Ins. Co.,* 234 Pa. St. 31, 38, respecting this identical provision:   "In the present policy the word 'occupant' seems to be used to indicate actual possession or occupancy, and the word 'possession', as used with the words 'interest' and 'title' in the clause in question, seems to mean legal possession, or possessory right.   *   *   *   We do not find that there was any change in the possession except the physical occupancy of the premises, which is not forbidden by the term of the policy of insurance."   Upon this reasoning the court held

that the receiver appointed in the case, who took actual posses-
sion of the property of insured, had no possessory right in the
legal sense of the term, but.was merely a custodian or caretaker
whose duty it was to conduct the sequestered business so as to
maintain, as far as possible, its continuity, in order that, if the
final adjudication should be in favor of the owner, his property
and business might be returned to him with the least possible
damage and impairment.   The Supreme Court of Appeals of
Virginia in the recent case of *Aetna Insurance Co.* v. *Aston,* 123
Va. 327, adopts a similar· construction, though upon somewhat
different facts, holding that the change of possession contem-
plated by ·a provision of this character is a change in the lawful
right of possession as distinguished from mere occupancy, and·
refers to the insured's possessory right rather than to his physical
occupancy of the premises.   See also 2 Cooley's Briefs on In-
surance, p. 1723.

The appointment of a receiver does not effect a change of
title to the property.  He is merely a custodian or caretaker
acting for and under the direction of the court whose representa-
tive he is.   When he assumes possession of the property, he
does so in the capacity of temporary occupant whose only duty
is to preserve the assets intrusted to him pending the determina-
tion of the court respecting conflicting claims thereto, and if in
favor of the owner, to return his property to him intact, as ·far
as possible under the circumstances.   The receiver enjoys none
of the beneficial incidents which ordinarily are characteristic of
a legal possession.   He represents not his own but the interests
of others.   The title and beneficial right remain in the owner,
though for the time being the latter is removed from the occu-
pancy and administration of his property and another appointed
to act temporarily in his stead and for his benefit and protec-
tion.   The receiver's custody is more that of an occupant than
of one entitled as of right to the possession; and the policy ex-
cepts from its provisions "changes of occupants without increase
of hazard."   Whether there has been an increase of hazard is
a question to be determined upon the trial of the case.   *Waldradt*
v. *Phoenix Insurance Co.,* 136 N. Y. 375.   The power exerted
through a receivership has for its chief purpose the preservation
of the sequestered property to meet present demands against it.

Their satisfaction entitles the owner to resume the control of which he is deprived only temporarily, often for his own protection against loss or damages, as by the accumulation of the costs of litigation, or of his creditors, some of whom otherwise might obtain an unmerited advantage over others not similarly situated with respect to the indebtedness due them.    Besides, the owner nevertheless has such an interest in the property as entitles him to apply to the court for the redress of any grievance to which he may improperly be subjected by the receiver.

In addition to the authorities cited above in support of the conclusion reached respecting the nature and effect of the receiver's occupancy of the insured premises, there are others which, though somewhat different in their facts, yet possess an inferential bearing upon the question at issue sufficient to entitle them to citation. *Keeney* v. *Home Insurance Co.,* 71 N. Y. 396; *Waldradt* v. *Phoenix Insurance Co., supra; Farmers' Fire Ins. Co.* v. *Baker,* 94 Md. 545; *Georgia Home Insurance Co.* v. *Bartlett,* 91 Va. 305; *Thompson* v. *Phoenix Ins. Co.,* 136 U. S. 287.    For a general discussion of the question see 14 R. C. L. 1122; 4 Joyce on Insurance (2d Ed.), § 2288a; 2 Cooley's Briefs on Insurance, pp. 1747-1748, and Supplement, volume 6, corresponding pages; Elliott on Contracts, § 4260; Notes, 16 Ann. Cas. 868 and 19 L. R. A. (N. S.) 643.    If it becomes necessary to resort to the rules of interpretation to ascertain the true meaning of an insurance policy, and it is susceptible of more than one construction, the one most favorable to the insured is to be adopted, according to the authorities. *Tucker* v. *Colonial Fire Ins. Co.,* 58 W. Va. 30; *Downey* v. *National Fire Ins. Co.,* 77 W. Va. 386; *Prudential Fire Ins. Co.* v. *Alley,* 104 Va. 356.    As the conclusion reached is inconsistent with the holding in the Bronson case (64 W. Va. 494) we therefore overrule it.

The remaining question for consideration relates to the reorganization of the Hinton Hardware Company under the corporate name and charter of the New River Hardware Company, and the transfer to the latter of all the "assets" of the former, including presumably the building insured.    Whether the conveyance from the old to the new company, having the same stockholders and management, involved such a change of title as

worked a forfeiture of the policy depends upon the further question whether the reorganization had the effect of creating a new and different corporate body or merely continued the existence of the original company under a new name but without any change of identity. The latter question is sometimes as important as it is difficult of solution. For its correct determination it is necessary to look to the terms of the statute under which the reorganization was effected, to the provisions of the old and new charters and the proceedings attendant upon the reorganization. Only in this manner and from these facts can we determine whether it was the intention of the legislature in authorizing such procedure and of the parties in availing themselves of it to continue the existing corporation without change of identity or to create a new and different corporate entity. 7 Fletcher, Cyclopedia of Corporations, §§ 4834, 4952 et seq., 4970; 5 Thompson on Corporations §§ 5983 et seq; 2 Clark & Marshall on Private Corporations § 339. Generally, however, upon such a reorganization a new corporation is created. 7 Fletcher, Cyc. of Corps, § 4953.

The declaration does not state sufficient facts to enable us to determine the true effect of the reorganization. It is silent concerning the procedure followed. It does not disclose the nature and contents of the respective charters or whether the original corporation was immediately dissolved upon the creation of the new or continued in existence. It alleges the transfer of assets from the original to the reorganized company, but states that "said transfer was purely formal and that thereby there was no change of interest of any stockholder * * * (or) in the business that was being conducted for the purposes for which any of the property of said Hinton Hardware Company was being used; that the stockholders in the New River Hardware Company were identical with those in the Hinton Hardware Company, and that each stockholder held the same proportion of stock in the New River Hardware Company that he had held in the Hinton Hardware Company." But these allegations have no material bearing upon the question whether the two companies were the same or different corporate entities, and do not constitute a prima facie showing that there was no change of identity.

If they are separate and distinct bodies, however, the transfer of assets resulted in a change of title within the meaning of the forfeiture clause of the policy. Though the stock ownership remained the same, the new corporate entity was distinct from the old and the title held by the one cannot reasonably be considered the title of the other. A new and different legal person is now the owner of the property insured, and there are no equitable considerations here present, based upon fraudulent conduct or otherwise, which sometimes induce courts to disregard the corporate entity and look to the ownership behind it. True business prudence should have led the insured or its successor to notify defendant of the reorganization and transfer of title and request its written consent to the arrangement; and if the latter had refused such reasonable request, then to reinsure in the same or with a different company. Having failed to do so, it cannot complain that the express provision of the contract is enforced against it. The conclusion reached by us is supported by the only two cases touching the subject which a diligent search has brought to our attention. *Cremo Light Co.* v. *Parker,* 118 App. Div. 845, 103 N. Y. Supp. 710; *Miles Lamp Chimney Co.* v. *Erie Fire Ins. Co.,* 164 Ind. 181.

For these reasons we reverse the ruling of the lower court, sustain the demurrer to the declaration, with leave to amend, and certify our conclusion for the guidance of the trial court in further proceedings in the case.

*Reversed and demurrer sustained.*