# CHARLESTON.

J. A. SHINN *et al. v.* WEST VIRGINIA INSURANCE COMPANY

(No. 5817)

Submitted October 4, 1927.   Decided October 25, 1927.

1. INSURANCE—*Plaintiff, Suing on Fire Insurance Policy, May Reply Generally to Statement of Defense Relying Solely on Fraud (Code c. 125; §§ 64, 65).*

    Where the defendant in an action on a fire insurance policy files a statement of defense, under section 64 of chapter 125 of the Code, relying solely on the fraud of the insured in making application for the insurance, the plaintiff may reply generally to such charges of fraud.   (p. 355.)

2. EVIDENCE—In *Action on Fire Insurance Policy, Parol Evidence That Company's Agent, Without Insured's Knowledge, Misstated Facts in Application, Held Admissible.*

    In an action on a fire insurance policy, parol evidence is competent to prove that the agent filled out the application,

and that the facts were fully and correctly stated to him, but that he without the knowledge of the insured misstated them in the application, although the insured signed the application. (p. 357.)

3.  INSURANCE—*To Make Answers in Application for Fire Insurance Binding, Policy or Paper Attached Thereto Must Show Parties' Intent to Incorporate Application in Contract; Insurance Contracts Are to be Construed Most Strongly Against Insurer (Code, c. 55, § 18).*

To make the answers of the insured in an application for a fire insurance policy binding on him as a part of the contract of insurance, the printed or written contract in the policy delivered to him by the insurer, or some paper attached or appended thereto, must clearly show the intent of the parties to incorporate such application in the contract; contracts of insurance are to be construed most strongly against the insurer and in favor of the insured.   (p. 358.)

4.  INSURANCE—*Statute Making Fire Insurance Companies Liable for Whole Amount of Insurance Stated in Policy in Case of Total Loss Held to Apply to Mutual Companies (Code, c. 34, § 40a, and chapter 55).*

Section 40a of chapter 34 of the Code, chapter 33 of the Acts of the Legislature of 1899, making all fire insurance companies doing business in this state liable for the whole amount of the insurance upon real estate stated in the policy of insurance, in case of total loss by fire or otherwise, applies to mutual companies organized under the provisions of chapter 55 of the Code.   (p. 360.)

5.  SAME—*Statute Making Fire Insurance Companies Liable for Whole Amount of Insurance on Real Estate in Case of Total Loss Held Not to Apply to Insurance on Personal Property (Code, c. 34, § 40a.).*

Said section 40a does not apply to insurance upon personal property.   (p. 367.)

6.  SAME—*Basis of Recovery on Fire Insurance Policy on Personal Property is Actual Loss Sustained, Not Exceeding Amount of Policy (Code, c. 34, § 40a).*

The basis of recovery on a fire insurance policy on personal property is the actual loss sustained, not to exceed the amount of the policy.   (p. 367.)

Error to Circuit Court, Jackson County.

Action by J. A. Shinn and others against the West Virginia

Insurance Company. Judgment for plaintiffs, and defendant brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*T. J. Sayre* and *S. A. Powell,* for plaintiff in error.
*Lewis H. Miller* and *J. L. Wolfe,* for defendants in error.

Miller, Judge:

In this action on a fire insurance policy, the plaintiffs recovered a verdict and judgment for the full amount of the policy, $1,500.00. The property covered by the insurance contract, a barn and some farm machinery, was completely destroyed by fire.

To the declaration defendant filed its statement of defense as provided by Section 64 of Chapter 125 of the Code, alleging in substance that the plaintiff, N. U. G. Shinn, in his application for the insurance, had made certain misrepresentations of fact, with the intent to injure and defraud the defendant, namely: (1) that he misrepresented the value of the property insured; (2) that with reference to the barn, to the question, "When built?" he answered, "10 years," when in fact the barn had been built more than 20 years before; (3) that to the question, "Has this risk been declined or canceled by any company?" he answered, "No," when it was a fact well known to him that a company named had declined the risk; (4) that to the question, "Have you ever had a loss by fire?" the defendant answered, "No," when in fact he had two dwelling houses destroyed by fire, and had collected the insurance thereon. To this statement of defense the plaintiffs replied generally; and issue was joined thereon.

The defendant insists that the plaintiffs should have been required to file their statement in writing, specifying the matters upon which they intended to rely in waiver, estoppel or in confession and avoidance to the matters set out in the statement of defense, as provided by Section 65 of Chapter 125 of the Code. Plaintiffs did not rely on waiver, estoppel

or any matter in confession and avoidance, but simply denied the charges of fraud by the defendant. In such a case the plaintiff may join issue without other pleading. *Logan* v. *Life Assurance Society,* 57 W. Va. 384.

To prove its charges of fraud on the part of the plaintiff N. U. G. Shinn, the defendant introduced as a witness the agent who took the application. He testified that he correctly wrote into the application, at the time, the answers as they were made to his questions, and produced and filed with his testimony the original application, signed by plaintiff N. U. G. Shinn.

Shinn does not deny signing the application, but says he did not read any part of it, and that it is his recollection that it was not filled out at the time. He testified that the agent came to where he was working on his farm not far from the barn and farm machinery covered by the policy sued on; that it was late in the evening, and he was busy about the repair of another barn at the time and told the agent that he did not care to take out insurance at that time; that upon the agent's insistence he consented to take out $1,000.00 on the barn and $500.00 on the farm machinery located in it; that the agent insisted on making the amounts larger; that the agent was in a hurry to go to another part of the state and declined to go to look at the barn, only the roof of which was in sight, saying he could see it was there; that the agent did not see the machinery at all; that he made true answers to every question asked him, and relied on the agent to insert them in the application blank, which he signed; that "the man was in a hurry, and we figured on some blank paper, figuring the barn and farm utensils, and I don't know, I don't think the blank was filled out there, I think he taken it home;" that he at first objected to insuring in a farmers' mutual company, and told the agent he had had to sue one company to collect on a loss by fire, but had collected on another loss without trouble, but that the agent assured him there would be no trouble, with his company, and that it had never been sued. He testified that he relied on the agent to insert in the application correctly the answers he made to all the questions asked. Plaintiff N. U. G. Shinn is corro-

borated in his version of what occurred by the testimony of a farm hand who was present, and who testified to substantially the same material facts.

Defendant, by counsel, objected to the introduction of parol evidence to vary the terms of a written contract. In *Deitz* v. *Insurance Company,* 31 W. Va. 851, this court said: "Parol evidence is competent to prove that the application was filled up by the agent of the company, and that the facts were fully and correctly stated to him, but that he without the knowledge of the assured misstated them in the application. This is not a violation of the rule, that verbal testimony is not admissible to vary a written contract. It proceeds upon the ground, that the contents of the paper was not his statements, though signed by him, and that the company by the acts of its agent in the matter is estopped to set up that it is a representation of the insured. *Insurance Co.* v. *Wilkinson,* 13 Wall. 222; May Ins., Sec. 143, and cases cited." This principle is well supported by the authorities. 2 Joyce on Insurance, (Second Ed.) Sec. 485; 33 C. J. 117; 14 R. C. L. 1176; and the cases cited. "If the facts regarding the risk are correctly stated to the agent, but erroneously inserted by him in the application, the company is chargeable with his error or mistake." *Coles* v. *Jefferson Insurance Company,* 41 W. Va. 261.

But defendant contends that the application was made a part of the contract of insurance by reference thereto, and that the insured are bound by the answers of the plaintiff N. U. G. Shinn, notwithstanding the agent may have erred in copying the same into the paper.

Plaintiffs rely on the case of *Bowyer* v. *Casualty Company,* 72 W. Va. 333, where it was held, in construing a provision of an insurance contract which attempted to make the insured's application a part of the contract by reference thereto, that Sections 15, 62 and 69 of Chapter 34 of the Code, "requiring policies of insurance to fully and plainly set forth the contracts between the parties thereto, excluded therefrom all conditions, agreements and warranties not expressed in the policies themselves or papers attached thereto." Said Sections 15 and 62 have no application to fire insur-

ance, and Section 69 was expressly repealed by Chapter 18 of the Acts of the Legislature of 1923, which prescribes a uniform form for fire insurance policies, not applicable, however, to farmers' mutual companies organized under Chapter 55 of the Code, like the one involved here.

The main body of the policy under consideration, the part of the contract signed and attested by the president and the secretary of the company, contains the following paragraph: "This policy is made and accepted subject to the foregoing stipulations and conditions, and the constitution, by-laws, policy contract and the assured's application of even number herewith." The first paragraph of the "Policy Contract," printed on the contract of insurance delivered to the plaintiffs, immediately following the main body of the policy signed and attested by the officers, as above mentioned, reads: "The constitution and by-laws of this company, and the application of the assured shall apply to and form a part of this policy as the same may be written or printed upon, or attached or appended hereto, and is equally as binding upon the insured as the company, and is made a part of this contract the same as if written on the face of this policy. Acceptance of policy by the insured is acceptance of the constitution, by-laws and policy contract in full." The constitution and the by-laws of the company are also printed in the contract delivered to the plaintiffs, immediately following the part headed "Policy Contract." But no part of the application, or a copy thereof, appears therein or appended thereto.

To make the application a part of the contract, defendant relies on Section 18 of Chapter 55 of the Code. This chapter, by Sections 11 to 20 thereof, provides for the organization, conduct, management and supervision of farmers' mutual fire insurance companies. Section 18 is: "The maximum amount carried in any one risk or hazard subject to one fire shall not exceed one per centum of the whole amount of insurance in force at the time such risk is accepted. The insurance contracts of all such companies shall be made to conform with all the provisions of this chapter and shall consist of the

policy proper, constitution, and by-laws of the company, all endorsements made on or attached to the policy, and such parts of the application as are attached to or incorporated in the insurance contract, and any premium note or other policy obligation given by any member, all of which shall be binding on the insured as long as he remains a member of the company.''

In what way does this section serve to make the application a part of the contract sued on? It only says that such parts of the application as are attached to or incorporated in the ''Insurance Contract'' shall be a part of said contract. In what way is any part of the application incorporated in the contract in this case? While the paragraph in the main body of the policy quoted above says that the policy is made and accepted subject to the policy contract and the assured's application of even number, the ''Policy Contract'' makes the application a part of the contract ''as the same may be written or printed upon, or attached or appended'' thereto. The first mentioned paragraph does not in terms make any part of the application a part of the policy or contract, while the opening paragraph of the ''policy contract'' clearly requires the application to be written or printed upon, or attached or appended to the ''policy'' to make it a part of the contract. As the contract so printed and written, and signed by the officers of the company, was delivered to the plaintiffs as the contract of insurance, they had a right to believe that they were in possession of the complete contract between them and the company, and to rely on it as embodying the rights of both parties in respect thereto. Contracts of insurance are to be construed most strongly against the insurer and in favor of the insured. *Bond* v. *Insurance Company,* 77 W. Va. 736; *Downey* v. *Insurance Company,* Id. 386; *Bowling* v. *Insurance Company,* 86 W. Va. 164.

The ''policy contract'' provides that the company shall not be liable for an amount greater than three-fourths of the actual cash value of the property damaged or destroyed at the time of such loss or damage. Plaintiffs only testified that the property destroyed was of the value stated in the

policy. No attempt was made to prove a greater value. The property insured was completely destroyed.

Counsel for defendant contends that the holding of this court in *Ritchie County Bank* v. *Fireman's Insurance Company*, 55 W. Va. 261, and *Teter* v. *Norfolk Fire Insurance Company*, 74 W. Va. 461, does not apply to farmers' mutual companies organized under Chapter 55 of the Code. Those cases hold that a three-fourths value clause in the policy or contract of insurance is inconsistent with the statute, Section 40a of Chapter 34 of the Code, and void, and that said section renders companies doing business in this state liable, in case of total loss by fire, for the whole amount of insurance upon real estate stated in the policy. In the *Ritchie County Bank* case the validity of valued policy laws was upheld, and the reason for so holding discussed at length, citing a number of cases from other states having statutes similar to our own. Said Section 40a is as follows: "All fire insurance companies doing business in this state shall be liable, in case of total loss by fire or otherwise, as stated in the policy on any real estate insured, for the whole amount of insurance stated in the policy of insurance upon said real estate; and in case of partial loss by fire or otherwise, as aforesaid, of the real estate insured, the basis upon which said loss shall be computed shall be the amount stated in the policy of insurance effected upon said real estate, and the insured shall have the right to enforce his claim for said loss in any court having jurisdiction."

With the exception of Section 18 of said Chapter 55, quoted above, and Section 13, hereinafter referred to, that statute, in so far as it relates to mutual fire insurance companies, provides only for their organization, the conduct of their corporate affairs, and supervision by the insurance commissioner. No other regulatory provision with respect to insurance or insurance contracts is found therein. Section 18 was added to Chapter 55 by the re-enactment of the entire chapter in 1908. Chapter 55 of the Acts of the Legislature of 1877, entitled, "an Act authorizing the incorporation of mutual fire insurance companies," contained many of the pro-

visions later incorporated in Chapter 98 of the Acts of 1882. The act of 1882, however, was styled: "An Act to amend and re-enact chapter fifty-five of the Code of West Virginia, concerning incorporated associations other than joint stock companies," etc. Chapter 55 of the Code was again re-enacted by Chapter 32 of the Acts of 1908. In this latter act the term "farmers' mutual fire insurance companies" was first used.

No change has been made in Section 40a of Chapter 34 since its enactment in 1899. Mutual fire insurance companies were in existence, or at least authorized, at that time. This section, being all of Chapter 33 of the Acts of 1899, is entitled: "An Act fixing the liability of fire insurance companies." It was not passed with reference to any particular chapter of the Code, or to any former act or existing statute; and we have no evidence of any intent on the part of the Legislature to limit its application to any particular chapter of the Code, or to exclude from its effect insurance companies organized under the provisions of any chapter. It is not within the province of this Court to say what reasons the Legislature had in mind in enacting this statute, nor that those reasons do not apply to mutual insurance companies as well as to stock companies. That this section is now found in Chapter 34 of the Code argues nothing. Joint stock insurance companies are not organized under the provisions of Chapter 34, but under Chapter 54. Until the year 1907, Chapter 34 provided for the regulation of insurance, telegraph, telephone and express companies, under the supervision of the auditor of the state. Chapter 77 of the Acts of the Legislature of 1907, which revised, amended and re-enacted Chapter 34, made the auditor of state *ex-officio* commissioner of insurance, and enacted a number of additional regulations relating to insurance companies, but omitted from the chapter all matters respecting telegraph, telephone and express companies. So that as presently constituted Chapter 34 provides only for the regulation and supervision of insurance companies in the business for which they were organized, while Chapter 54 provides for the organization and

corporate regulation of joint stock companies, and Chapter 55 for the organization of corporations, societies, associations, and the like, other than joint stock companies. We can see no reason why the Legislature did not intend that Chapter 33 of the Acts of 1899, now Section 40a of Chapter 34 of the Code, should apply to all insurance companies, whether organized under the provisions of Chapter 54 or Chapter 55.

And it has been held in other jurisdictions that valued policy statutes are applicable to mutual fire insurance companies, unless they are expressly exempted therefrom. 1 Joyce on Insurance, (2nd ed.), Sec. 163g; 4 Cooley's Briefs on the Law of Insurance, p. 3093; *Farmers Mutual Insurance Company* v. *Cole*, (Neb.), 93 N. W. 730; *Word* v. *Southern Mutual Insurance Company*, 112 Ga. 585; *Gibson* v. *Missouri Town Mutual Insurance Company*, 82 Mo. App. 515. In the *Georgia* case, where the statute provided that, ''All insurance companies shall pay the full amount of loss sustained upon the property insured by them: *Provided,* said amount of loss does not exceed the amount of insurance expressed in the policy; and all stipulations in such policies to the contrary shall be null and void,'' it was said: ''The defendant is a mutual insurance company, and one of its contentions is, that this section of the Civil Code is not applicable to contracts of fire-insurance made by and with a mutual insurance company. In our opinion this contention is not sound. The language of the section is too broad and sweeping for such a construction to be placed upon it; it embraces 'all insurance companies'. No exemption is made in favor of mutual insurance companies. At the time that the act of 1895 was passed, the defendant company was in existence as a mutual insurance company, and carrying on its business in Georgia, under a charter granted by this state in 1847. It is not at all probable, and is scarcely conceivable, that the General Assembly intended that this old and well-established mutual fire-insurance company, or any other mutual fire-insurance company, should be exempt from the provisions of an act in express terms applicable to 'all insurance companies,' when no provision for such exemption was made. The language employed by the Legislature, and subsequently incorporated

in the Civil Code, precludes the idea that there was any intention that contracts for fire-insurance made by mutual insurance companies should not be affected by the provisions of the statute. It is well settled that, unless expressly exempt by statute, mutual insurance companies are included under a general law which, in its terms, applies to all insurance companies. 16 Am. & Eng. Enc. L. 24; *McConnell* v. *Iowa Mut. Aid Assn.*, 79 Iowa 757; *State* v. *Miller*, 66 Id. 26; *Sherman* v. *Commonwealth*, 82 Ky. 102; *State* v. *Nichols*, 78 Iowa 747; *Farmer* v. *State*, 69 Tex. 561; *Order of International Fraternal Alliance* v. *State*, 77 Md. 547; *Rockhold* v. *Canton Masonic Benev. Soc.*, 129 Ill. 440."

While there seems to be but few cases on the question of valued fire insurance policy laws with reference to mutual companies, we find no cases holding contrary to the Georgia, Nebraska and Missouri courts. An examination of the cases cited in the opinion in the *Georgia* case, it is true, reveals the fact that they involved the question of the applicability of general insurance laws to mutual benefit life and accident insurance companies; but is not the principle the same? The contention here is, that since each insured is a stockholder, member or partner in the company, he has a legal right to make any contract with the other members which the parties see fit to enter into, without regard to the statutory requirements imposed upon stock insurance companies, where the stockholders and the insured have no community of interest. That was the question raised in the cases cited above. It was there contended that the system of insurance to which the policies involved belonged was "purely benevolent," and, therefore, ought not to be subject to the legislation applicable to other classes of insurance. To this proposition the Supreme Court of Iowa, in *McConnell* v. *Iowa Mutual Aid Association, supra,* responded: "We think the 'benevolence' in the case is purchased for, at least, a fair, if not a liberal, consideration, and rests upon a contract which must be regarded and enforced by the law as all other contracts. It will not do to recognize a rule which requires courts to consider the purposes of contracts, or to be guided in their interpretation and the application of remedies for enforcing them, by the benefits conferred upon the contracting parties, and the benevolent

purposes they had in view when they assumed the obligation of the contract.'' In that case it was held that the statute requiring applications and representations upon which policies are issued to be attached to or endorsed on the policies, and that omission so to do does not invalidate the policy, but precludes the company from pleading or proving the falsity of the representations, applies to mutual life insurance companies on the assessment plan, although neither that nor any similar provision is found in the statute regulating mutual benefit associations.

In addition to the provision in the policy limiting the company to liability for three-fourths of the actual cash value of the property destroyed, the policy also provides: ''The total insurance permitted is hereby limited to three-fourths the cash value of the property hereby covered and to be concurrent herewith;'' and Section 1 of the by-laws of the company made a part of and attached to the policy contract is: ''All property insured in this company shall be listed at not to exceed three-fourths of its actual value.'' These provisions were complied with in making out the application on which the policy was issued. This application shows that the barn was valued at $1,500.00, and insured for $1,000.00; and that the personal property listed by items, was valued at $775.00, and insured for $500.00, no single piece of machinery being insured for more than three-fourths of the value set out in the application.

Defendant puts much stress on that part of Section 18 of Chapter 55 of the Code which reads: ''The insurance contracts of all such companies shall be made to conform to the provisions of this chapter and shall consist of the policy proper, constitution and by-laws of the company, all endorsements made on or attached to the policy, such parts of the application as are attached to or incorporated in the insurance contract, and any premium note or other obligation given by a member, all of which shall be binding as long as he remains a member or policy holder of the company.'' The only other provision in this chapter that refers to policy contracts is Section 13, as follows: ''Every such company may then be authorized to issue policies of insurance, signed by its

president and secretary, agreeing in the name of the company to pay all damages caused by fire, lightning or tornado to the property insured during the life of the policy. There shall be a clause plainly printed on the policy that the holder thereof (the insured) is liable for such assessments as may be necessary to pay in full his pro rata share of all losses and expenses incurred by the company." It will be noted that the terms of the policy are to be "agreeing in the name of the company to pay *all* damages caused by fire," etc., not some proportion of the loss or value of the property. And while the word "may" is used in connection with the authority of the company to issue policies, we think this word, when construed in connection with the other provisions of the chapter, only means that the company, after complying with the provisions of Section 2 and securing a charter from the secretary of state, and obtaining a certificate of authority from the insurance commissioner, as provided by Section 12, "may" begin the transaction of business and issue policies of insurance; but that such policies must be signed by its president and secretary, and agree to pay all damages, etc., not of course to exceed the value stated in the policy. While the term "may" is usually construed in the sense of permission, here the permission extends only to the authority of the company to do business, not to permit it to write any kind of policy, or as many different kinds, as it may see fit. The plaintiffs here, and every member of the company, may be bound by the provisions of the by-laws; but the provision of the policy limiting the liability of the company to three-fourths of the loss sustained by the insured is not a part of the by-laws, but is contained in the "policy contract" attached to the policy delivered to them. There is nothing in the evidence to show that every policy issued by the company contains a three-fourths clause as to losses; and if the officers of the company may so limit its liability by inserting provisions in the contracts to that effect, they may contract on different terms with each insured, and thus destroy the mutuality of the contract, which must necessarily depend on every contract being alike in every material provision. The mutuality of the defendant company, and assessments against

members in proportion to the amount of insurance carried by each to pay losses incurred by other members, is the theory upon which the defendant relies to relieve it of the effect of the general insurance statutes.

No doubt the company had Section 40a in mind at the time of the adoption of Section 1 of its by-laws, and undertook thereby to protect itself from paying losses to the full value of the property insured, as had been done by the three-fourths clauses in many policies before the enactment of that statute. That section of the by-laws was fully complied with by the application for the policy in controversy. The policy was for a term of one year only. Any depreciation in value could readily be taken into consideration in making renewals.

It is said that the three-fourths value clause was a part of the consideration upon which the rate of premium was fixed. But whether the insured's assessments were based on the value stated in the policy, or on three-fourths of that amount, his pro rata share of an assessment would be the same. He might be required to pay a slightly larger amount in case the losses were based on the insured value instead of three-fourths of the actual value, but on the other hand he would at the same time have the increased protection against loss, for in case of loss he also would receive the insured value of his property.

The defendant complains of plaintiff's instruction number one, given, as follows: "The court instructs the jury that if you believe from all the evidence in this case that the plaintiffs insured their property described in the declaration and in the insurance policy filed therewith and paid the premiums thereon, and that the property described in the said policy was destroyed by fire without the fault of the plaintiffs or either of them, and that the plaintiffs notified the said defendant of the loss of the property so insured within the time required by the policy of insurance and that the value of the property of plaintiffs is equal to or greater than the amount set forth in the policy in this action, then you are

further instructed that the plaintiffs are entitled to recover the amount sued for in this action, if you further believe that the policy was not issued through the fraud of the plaintiffs or either of them.''

It will be noted that Section 40a of Chapter 34 of the Code, in terms applies only to ''real estate''. Five hundred dollars of the amount named in the policy in question was on farm machinery. The reason given for the holding as to the three-fourths value clause in *Ritchie County Bank* v. *Firemen's Insurance Company, supra,* and *Teter* v. *Norfolk Fire Insurance Company, supra,* is that the clause in the policy is inconsistent with the statute,—that the statute must be regarded as a part of the contract of insurance, as if written in the policy. As to real estate the policy becomes a valued one by reason of the statute. *Ritchie County Bank* v. *Fireman's Insurance Company, supra.* The terms of the statute are clear, and apply to real property only. In such case the three-fourths clause in the policy will control in the case of loss of personal property. 1 Joyce on Insurance, (2nd ed.), Sec. 163e.

Counsel for plaintiffs argue that since the application for the insurance on the personal property states a value of $775.00, and the insurance thereon being less than three-fourths of that amount, the amount stated in the application should be taken to be the actual value of the property for the purpose of determining the amount of plaintiffs' recovery. ''Ordinarily the amount recoverable on a fire policy is the actual loss sustained, not to exceed the amount of the policy.'' 14 R. C. L. 1301. What was the loss sustained by plaintiffs? Necessarily the value of the property at the time it was destroyed. They only testified that each article was worth the amount for which it was insured. No attempt was made to prove a greater value. The application is no evidence of loss, but only of the value of the property at the time the application was made. Since Section 40a of Chapter 34 does not apply to personal property, plaintiffs' instruction number one was erroneous as to such property.

For the error in submitting to the jury this instruction, the judgment will be reversed, the verdict of the jury set aside, and the defendant awarded a new trial.

> *Judgment reversed; verdict set aside;*
> *new trial awarded.*