RALPH THOMPSON *v.* STATE AUTOMOBILE MUTUAL INSURANCE COMPANY

(No. 9057)

Submitted September 24, 1940. Decided October 22, 1940.

*Rummel, Blagg & Stone,* for plaintiff in error.
*B. J. Pettigrew* and *A. P. Hudson,* for defendant in error.

RILEY, PRESIDENT:

State Automobile Mutual Insurance Company prosecutes error to a judgment of $10,000.00 in favor of Ralph Thompson, rendered by the Circuit Court of Kanawha County, under a suggestion based upon a $14,000.00 judgment of that court in a case in which Thompson was plaintiff and Harmon A. Smith was defendant.

The judgment against Smith is based upon personal injuries claimed to have been received by plaintiff when struck by a truck owned by the former. Execution was issued on this judgment, and plaintiff suggested the insurance company as being indebted to the insured, Smith, under a certain policy of public liability and property damage insurance issued to the latter on December 2, 1937. This policy, as originally issued, in an endorsement designated "FLEET SCHEDULE", lists the six automobiles covered, and describes each as having a tank body and classifies the use of each as "commercial"; and, by another endorsement, provides that the insurance afforded thereby shall cover the legal liability of Harmon Smith, United Fuel Gas Company and Mullins Gas Company, in the use, ownership, maintenance, or operation of the automobiles covered. An endorsement to the policy, dated March 9, 1938, effective at 12:01 A. M. standard time March 9, 1938, substitutes a truck described as:

| | | Motor # | Serial # | Uses | Indemnity | Prem. |
|---|---|---|---|---|---|---|
| #3-Intern'l. | Tank 1600 Gal. 1936 | 21421 | 2903 | Comm'l. | 10-20-5 | $82.65 |

for one of the originally insured trucks. (The truck so substituted is the one which struck and injured the plaintiff herein.)

The policy contains, among others, the following provision, the construction of which is in issue:

"2. AUTOMATIC INSURANCE FOR NEWLY ACQUIRED AUTOMOBILES. If the named Insured who is the owner of the automobile acquires ownership of another automobile, such insurance as is afforded by this policy applies also to such other automobile as of the date of its de-

livery to him, subject to the following additional conditions: * * * (2) if the company does not insure all automobiles owned by the named Insured at the date of such delivery, insurance applies to such other automobile, if it replaces an automobile described in this policy and may be classified for the purpose of use stated in this policy, but only to the extent applicable to the replaced automobile; (3) the insurance afforded by this policy automatically terminates upon the replaced automobile at the date of such delivery; and (4) this agreement does not apply * * * (b) unless the named Insured notifies the company within ten days following the date of delivery of such other automobile * * *, nor (d) unless the named Insured pays any additional premium required because of the application of this insurance to such other automobiles. * * *."

At the time of taking out the insurance, Smith had nine trucks, three without and six with tanks. The latter group, covered by the policy, were at the time used in hauling drip gasoline from gas wells of the United Fuel Gas Company and Mullins Gas Company in Poca District, Kanawha County, to the refinery. The truck involved in the instant case was purchased on December 30, 1937. When purchased, it was not equipped with a tank. A license therefor was obtained on January 7, 1938, and thereafter it was used to a limited extent in general hauling. About March 5, 1938, one of the fleet of six trucks was so badly damaged that its chassis was cut up and sold for junk, and the tank therefrom installed on the truck which Smith had purchased in December. The latter truck was thereupon put in service, with the remaining five tank trucks, hauling drip gasoline. On March 8, 1938, while in such service, the last-mentioned truck struck the plaintiff. On the day following, the insurer, upon request of insured, executed the endorsement, heretofore referred to, making the substitution in the policy.

The insurance company takes the position that the substituted truck was not covered by the policy at the time of the accident. Both it and the plaintiff assert that

the issue of coverage is dependent upon a proper interpretation of the automatic provision, heretofore set out in *haec verba.* Before giving further attention to this provision, it is well to consider some rules of construction.

In numerous cases, this Court has adopted and maintained as a cardinal rule of construction that clauses in insurance contracts should be construed liberally to the insured. *Kanawha Investment Co.* v. *Hartford Steam Boiler Inspection, etc., Co.,* 107 W. Va. 555, 557, 149 S. E. 605; *Hamlet* v. *American Fire Ins. Co.,* 107 W. Va. 687, 690, 150 S. E. 7; *Cook* v. *Citizens Ins. Co. of Missouri,* 105 W. Va. 375, 376, 143 S. E. 113, 61 A. L. R. 657; *Shinn* v. *West Virginia Ins. Co.,* 104 W. Va. 353, 359, 140 S. E. 61; *Booher* v. *Farmers' Mutual Fire Assn. of W. Va.,* 91 W. Va. 468, 113 S. E. 754; *Bowling, Rec'r.* v. *The Continental Ins. Co.,* 86 W. Va. 164, 103 S. E. 285, 17 A. L. R. 376; *Bond* v. *National Fire Ins. Co.,* 77 W. Va. 736, 88 S. E. 389; *Downey, Rec'r.* v. *The National Fire Ins. Co., id.* 386, 87 S. E. 487. This rule of construction, cardinal as it is, should not be applied to contravene the intention of the parties. In all events, "policies of insurance, like other contracts, must receive a reasonable interpretation consonant with the apparent object and plain intent of the parties." Pt. 3, Syl., *Kanawha Investment Co.* v. *Hartford Steam Boiler Inspection, etc., Co., supra.* However, once the intention is clearly ascertained, the policy is to be liberally construed in order to carry out that intention. 29 Am. Jur. 173, and cases cited in Note 1. In ascertaining the intention of the parties to an insurance contract, the test is what a reasonable person in insured's position would have understood the words of the policy to mean. Pt. 3, Syl., *Merchants Mutual Casualty Co.* v. *Lambert,* 90 N. H. 507, 11 Atl. (2d) 361, 127 A. L. R. 483; *Watson* v. *Firemen's Ins. Co.,* 83 N. H. 200, 202, 140 Atl. 169.

Defendant's counsel rely upon the part of the automatic provision of the policy to the effect that, subject to certain named conditions, if the insured acquires another automobile, "such insurance as is afforded by this policy

applies also to such other automobile *as of the date of its delivery to him * * *."* (Italics supplied). They argue that because the truck involved here was purchased by and delivered to the insured on December 30, 1937, and notice thereof not given to the insurer until March 9, 1938, the day after the accident, the automatic provision did not operate to insure the newly acquired automobile as of March 5, 1938, the date of the substitution; and that the insured, having failed to notify the company within the ten-day period, following the acquisition of the new truck, has forever lost the opportunity or means of bringing such newly acquired truck within the operation of the policy, unless by agreement the company should extend to him such right.

But does such construction fairly express the intention of the parties, when the contract is considered in its entirety? May it not be said that the purpose of the provision is to give insured the right to substitute a newly acquired automobile for one of those embraced in the policy, without placing upon him the task of first obtaining permission from the insurance company? If permission were required, an insured under the present circumstances would have no greater rights than if the automatic provision was not in the policy, because every contract of insurance, like any other contract, can be altered or modified by an agreement between the parties. The obtaining of such permission, whether or not it is tantamount to a modification of the contract, in some cases, due to the unavailability of an authorized agent of the insurer at the place and time of such substitution, would be impossible when immediate transfer of the insurance is imperative.

As insurer's counsel suggest, the automatic provision was inserted in the policy for the benefit of the insured, and there is respectable authority to the effect that the burden of proof rests upon the insured to bring himself within its terms by making a satisfactory proof of the extended coverage. Appleman, Automobile Liability Insurance (1938) 147. But because this provision inures to insured's benefit, all the more reason that, under the

liberal construction rule, every reasonable effort, not however amounting to change in phraseology, should be invoked to secure that benefit to the insured.

Plaintiff's position that the ten-day period begins with the substitution would indeed be untenable if the automatic provision of the policy stood alone without the conditions contained therein. The words "as of the date of its delivery to him", standing alone, clearly refer to a manual delivery of the automobile to the insured. The second condition of this provision specifies that "if the company does not insure all automobiles owned by the named Insured at the date of *such delivery,* insurance applies to such other automobile, if it replaces an automobile described in this policy and may be classified for the purpose of use stated in this policy, but only to the extent applicable to the replaced automobile." There the delivery contemplated is that provided for in the main body of the provision. The third condition provides that the insurance terminates automatically upon the replaced automobile "at the date of such delivery" and refers to manual delivery. The fourth condition provides that the agreement does not apply, " (b) unless the named Insured notifies the company within ten days following the date of delivery of such other automobile." Here the word "such" does not operate to modify the word "delivery". If it was intended by this condition that the delivery of the newly acquired automobile referred to the manual delivery provided for in the preceding parts of the automatic clause, the insurer could and should have inserted the word "such" before the word "delivery", or should have used some other language which would have clearly referred to the kind of delivery specified in the first part of the provision. This fourth condition alone provides for the ten-day notice to the insurer. Relying upon it, the insurer's counsel say that the lapse of ten days after the acquisition of the replacing truck precluded the automatic extension of the policy thereto. Our view of condition four, read in connection with the other parts of the automatic provision, renders the earlier words of the

policy, to the effect that the insurance should apply to a newly acquired automobile "as of the date of its delivery to him", not decisive of this case. The Supreme Court of New Hampshire, in the *Lambert* case, *supra,* in dealing with a similar automatic provision, but a different state of facts, the accident there having occurred on the day of the delivery of a newly acquired automobile, held that an insured had a reasonable time in which to adjust premiums.

Let us, however, now look to other provisions of the policy and the circumstances surrounding the replacement of the damaged automobile. An endorsement to the policy expressly specifies that the provisions pertaining to bodily injury liability and property damage liability shall extend to the insured, the United Fuel Gas Company and the Mullins Gas Company. It is shown that from the date of the policy to March 5th the six original trucks, and from March 5th to the date of the accident five of the original trucks and the new truck, were used continuously in the transportation of drip gasoline for the two named companies. It is also important to note that the replaced truck by being completely dismantled could no longer be used in hauling gasoline. By placing the tank on the newly acquired truck it became possible to use it in the manner suggested inferentially by the endorsement extending coverage to the gas companies and expressly in the testimony of the insured. And, finally, one of the original endorsements, designated as "FLEET SCHEDULE", expressly stated that all of the automobiles embraced in the policy have tank bodies. When these provisions of the policy, in connection with the evident purpose of the automatic provision, are considered, we are prompted to say that the parties never intended that the ten-day period in the latter should run from date of actual manual delivery of the new truck to the insured, but rather from the date of its actual substitution for one of the trucks in the fleet of six.

We, of course, do not say that the simple caption of the automatic insurance provision, "Automatic Insurance for

Newly Acquired Automobiles" and that of the original endorsement "FLEET SCHEDULE" of themselves would justify our construction of the policy. A caption should never of itself be taken to override the intention of the parties to an insurance policy as shown by the provisions and clauses inserted thereunder. *Continental Casualty Co. v. Trenner,* (U. S. Dist. Ct., Eastern Dist. Pa.), 35 Fed. Supp. 643, 2 C. C. H. Automobile Cases, 313. These captions, however, read in connection with the clauses inserted under them, aid us in arriving at the intention of the parties.

We have not been unmindful that the tank automobiles used in the service of the two gas companies were subject to severe and gradually destructive use; that at the time the automobile in question was acquired, two of the automobiles then embraced in the policy were in bad condition; and that it was prudent and foresighted for the insured to acquire and keep in reserve at least one automobile available in the event of an emergency which, under the circumstances as disclosed by the record, was inevitable. Surely we should hesitate to penalize a person for his prudence and foresight. In no event should the provisions of an insurance policy be construed so as to effect such a penalty where, under a liberal construction of the policy, the penalty may be avoided. Our construction of the policy, we think, is fully justified under the circumstances and the rules of liberality governing the construction of insurance policies. Such construction conserves the ends of justice and gives—in all deference to counsel for the insurer—a practical appraisal of the intentions of the parties as expressed in the policy provisions.

We are, therefore, of opinion that the trial court did not err in entering the final judgment complained of and that judgment is affirmed.

*Affirmed.*