**FEDERAL INS. CO. v. PILGRIM LAUNDRY & DRY CLEANING CO. et al.**

No. 225.

District Court, S. D. West Virginia.

June 21, 1943.

John E. Jenkins, of Huntington, W. Va., for plaintiff.

Paul W. Scott and H. L. Ducker, both of Huntington, W. Va., for defendants Pilgrim Laundry & Dry Cleaning Co. and another.

HARRY E. WATKINS, District Judge.

Plaintiff seeks a declaratory judgment that a fire insurance policy issued by it

does not cover a building which was destroyed by fire, and owned by defendant, Pilgrim Laundry and Dry Cleaning Company. The laundry company contends that the building destroyed was an "addition" which was "adjoining and communicating" to a larger building of their plant, which was insured by plaintiff, and therefore covered by plaintiff's policy. Plaintiff says that its policy covered the building therein described, and that the building destroyed by fire was a separate insurable building and not an "addition" within the meaning of the policy and the understanding of the parties. The case has been submitted upon an agreed statement of facts.

The laundry company owned two buildings in Huntington, W. Va., both of which were used in its business. The larger, or front building, was a one and two-story concrete block building, 175 feet long, 60 feet wide, and located at the corner of Sixteenth Street and Eleventh Avenue, fronting on Sixteenth Street. The smaller, or rear building, was a one-story frame and concrete block building, about 92 feet long and 70 feet wide, located in the rear of the larger building, and fronts on Eleventh Avenue. The smaller building contained the steam boilers, gas engines for generating electricity, and was used for storage of supplies and materials and for storage of delivery trucks. The large front building contained the laundry and dry cleaning machinery and offices. There was a ten-foot private alley between the two buildings. Doors in each building faced each other across the alley. Water and steam pipes, electric lines and a gas line ran from one building to the other across the alley. A large water storage tank was constructed over the alley, the tank resting on steel beams, extending from one building to the other across the alley.

On April 1, 1942 plaintiff issued and delivered to defendant laundry company, and defendant, Harriet E. McNeal (first mortgagee), its fire insurance policy for $15,000 for one year term, at a premium rate of $0.63 per $100 on the front building. It is this contract of insurance which has caused this controversy. The typewritten description of the property insured was described in the policy as follows: "On the one and two story, composition roof, concrete block building occupied for laundry purposes, situated on the northwest corner of Sixteenth Street and Eleventh Avenue, Huntington, West Virginia". Printed into the policy after this typewritten description was a provision that the word "building" as used in the policy shall be construed to cover as follows: "Building—On building and additions adjoining and communicating, including platforms, plumbing systems complete, fire extinguishing apparatus in the form of fixed and permanent equipment, electric wiring, stationary heating, lighting and ventilating systems, stationary scales, elevators and all other permanent fixtures of every description, belonging to and constituting a part of the building".

At the time defendants received this policy, they had in their possession two other insurance policies, both in full force and effect. On July 21, 1941, defendant North River Insurance Company issued and delivered to defendant laundry company and Harriet E. McNeal, as first mortgagee, a $2,000 fire insurance policy, for a one-year term, at a premium rate of $0.994 per $100 on the rear building. The property insured was described as follows: "On one story concrete and frame building, with composition roof, and its additions adjoining and communicating, occupied as a boiler house and garage purposes, * * * and on all permanent fixtures therein or thereon, situated North side of Eleventh Avenue, between Fifteenth and Sixteenth Streets, Huntington, W. Va."

Another $4,000 policy was issued and delivered to the same defendants by plaintiff on February 18, 1942, covering the contents, or personal property contained in both buildings. The typewritten description of the property insured and its location was as follows: "On their entire contents * * *, all while contained in two and one story, cement block, composition roof building, situated 1041–1045 Sixteenth Street, and in two and one story, concrete block and frame, metal and composition roof building, situated in rear of above described building, both in Huntington, Cabell County, West Virginia". This policy also contained the same printed provision defining the word "building" as was contained in plaintiff's policy here in controversy.

On April 17, 1942, the rear building used for a boiler house and for storage of delivery trucks was destroyed by fire, the loss amounting to $5,555.58. The front building was in no way damaged. If plaintiff's policy for $15,000 on the front building also covered the rear building, it will share the loss pro rata with the North River Insur-

ance Company, which would pay $653.58, and plaintiff would be liable for $4,902. If plaintiff's policy did not cover the rear building, the North River Company would be liable up to $2,000, the face amount of its policy. Although the North River Company has been made a party defendant, it has not filed an answer or made an appearance in the case.

Premium rates charged on these three policies were fixed or established by the West Virginia Inspection Bureau, a rating bureau authorized to do business in West Virginia. Plaintiff and the North River Insurance Company were both members of this rating bureau. The premium rate charged on the front building, a one and two-story concrete block building, was the flat rate established by such rating bureau for the front building. The premium rate charged on the rear building, a one-story frame and concrete block building, was the flat rate established for that building. The premium rate charged on the contents or personal property was the rate established as the average rate for blanket coverage on contents of both buildings. These facts concerning the premium rates charged, and paid by defendants for these insurance contracts, are admitted and included in the agreed statement of facts.

█ As a general proposition, ambiguous phrases in a fire insurance policy are construed against the writer thereof, and liberally in favor of the assured. Any building reasonably answering the description of an addition, if not inconsistent with other provisions of the policy, or opposed to existing facts, or the understanding of the parties, will be considered as an addition and included in the policy. However, this cardinal rule of construction will not be applied to contravene the intention of the parties. Policies of insurance, like other contracts, must always receive a reasonable interpretation consonant with the apparent object and plain intent of the parties. Thompson v. State Auto. Insurance Company, 1940, 122 W.Va. 551, 11 S.E.2d 849, 4 Appleman, Insurance Law and Practice, § 2324. Each case must be decided upon the facts of that particular case. The words used in the contract must be construed in the light of all the surrounding circumstances. The judge must put himself in the position of the parties and determine what must have been the reasonable intent of the parties from the terms used, under the particular facts and circumstances. Applying these rules to the facts in this case, I am of the opinion that the building destroyed by fire was not covered by plaintiff's policy. It seems very clear to me that plaintiff treated these two buildings as separate insurable units in all transactions with defendants, and did not intend to insure the building destroyed. Likewise, I am at a loss to understand how defendants could have misunderstood plaintiff's intent under these unusual circumstances.

█ When plaintiff delivered its policy to defendants, the latter had in their possession another policy covering the rear boiler house and garage building. Such policy was written by North River Insurance Company and described the building insured as the one-story concrete and frame building situated on the north side of Eleventh Avenue between Fifteenth and Sixteenth Streets. The flat rate paid by the defendants for this policy, and set out in the policy itself was $0.994 per $100. The rate on the front concrete block office building was only $0.63 per $100, it being less of a fire hazard than the concrete and frame building which housed a gas engine, boilers and four delivery trucks. The difference in construction of the two buildings, difference in use and consequent fire hazard, and especially the wide difference in premium rates would indicate that the parties considered the two buildings as separate or distinct insurable units. When defendants received plaintiff's policy with the rate clearly set out on the face of the policy, they well knew that the front and rear buildings carried different rates, and when they obtained plaintiff's policy on the front building at a considerably lower premium rate than they had paid for insurance on the rear building, they knew that such premium was not applicable to the rear building. It is quite obvious that defendants would not carry a separate policy on the rear building at a $0.994 rate, if they understood that the policy on the front building (rate $0.63) also covered the rear building. But this was not the only information which defendants had when they purchased the policy in question. Plaintiff had previously sold to these same defendants, and defendants then had in their possession, another policy in full force and effect, insuring the contents of both buildings. Defendants have stipulated that the premium rate charged for it was the "average rate for blanket coverage" on con-

tents of both buildings. The fact that the rate on the personal property was previously ascertained by averaging the rate for these separate buildings, would further indicate the knowledge and intention of the parties with reference to insurance involving both buildings. Both buildings were described in this personal property policy, thus indicating that the plaintiff considered each building as a separate unit. When defendants later received the policy in question from the same company describing only one building, they would have every good reason to believe that only one building was covered.

■ Defendants admit in the stipulation of facts that the rate charged on these buildings was the flat rate. In order to understand this statement it is necessary to examine the law relating to the fixing of fire insurance rates in West Virginia. The West Virginia Inspection Bureau which fixed the rates for these three policies is governed by Section 3370–3379, W. Va.Code. Section 3372 provides that the rating bureau shall rate risks upon schedule or upon flat rate basis. Rating upon schedule is done when the entire plant of an owner is rated as a unit—sometimes called blanket coverage. Flat rate basis is the rating of each unit separately.

■ Section 3376 prohibits unfair discrimination by insurance companies as to premium rates and Section 3381 provides penalties for violations. If the rates charged were flat rates, as stipulated by defendants, it would be a violation of the statute to insure a building with a flat rate of $0.994 at a rate of $0.63. To construe plaintiff's policy on the front building, which defendants admit was written on a flat rate basis, as including coverage on the rear building, would make the policy violate the statute. It would mean that plaintiff would be covering the rear building at a flat rate lower than the flat rate established by the rating bureau. It is not to be presumed that any of the parties intended to violate the statute.

In none of the three policies was either building referred to as an addition to the other. In each instance the property is described as a separate and distinct unit. That plaintiff treated them as separate units is shown by the fact that both buildings are fully described in the policy on the personal property. Defendants refer to them as separate buildings throughout their pleading.

It will be observed that defendants claim the rear building is an "addition" to the front building. The North River policy carried by defendants on the rear building contains the language "on building and its additions adjoining and communicating". Yet in defendants' answer they admit that the North River policy covered the rear building only. If the rear building was an "addition" to the front building, as defendants urge, by reason of the fact that the two buildings were operated as a unit in the laundry business, and by reason of the steam, electric, and gas lines communicating, it would seem that the front building would be an addition to the rear building. In this respect defendants are not consistent. If they understood that the policy on the rear building did not cover the front building, that the two were separate insurable units with different flat premium rates, there is nothing in the record to show a different understanding or intent as to the subsequent policy on the front building.

Cases cited by the defendants are not in point because in none of them do we find such strong surrounding facts and circumstances as we have here. Had it been necessary to decide this case on the language of the policy, without more, the result might be entirely different. In such event the cases cited by defendant interpreting the word "additions" would be more nearly in point. Defendants urge that there were no other building or additions to which the words "additions adjoining and communicating" could refer. Plaintiff points to a marquee, and two wooden units on the Eleventh Avenue side of the front building which are illustrations of "additions" which were covered by the policy.

■ In their brief defendants suggest that the difference in the premium rate in the two policies written on the two separate buildings might be on account of a "wholesale rate" being given on the $15,000 policy, since the policy on the rear building was only $2,000. There is certainly no merit in this argument. The rate is fixed for each $100 of insurance and remains constant regardless of the amount of insurance purchased.

■ Plaintiff argues that under the terms of its policy, additions covered are only those "belonging to and constituting a part of the building". While the decision reached in this case makes it unneces-

sary for me to decide this point, I can see no merit in this contention. I am of the opinion that the phrase "belonging to and constituting a part of the building" relates only to fixtures, such as plumbing, fire equipment, wiring, etc., and does not refer to adjoining and communicating additions or buildings.

An appropriate order may be entered in accordance with the views herein expressed.