## PILGRIM LAUNDRY & DRY CLEANING CO. et al. v. FEDERAL INS. CO.

### No. 5177.

Circuit Court of Appeals, Fourth Circuit.

Jan. 11, 1944.

Paul W. Scott and H. L. Ducker, both of Huntington, W. Va., for appellants.

John E. Jenkins, of Huntington, W. Va., for appellee.

Before SOPER and DOBIE, Circuit Judges, and WARING, District Judge.

WARING, District Judge.

The appellee, Federal Insurance Company, hereinafter called "Federal", instituted an action in the District Court for the Southern District of West Virginia seek-

ing a declaratory judgment in regard to a fire insurance policy heretofore issued to cover a building owned by Pilgrim Laundry & Dry Cleaning Company, appellant, hereinafter called "Pilgrim", on which building the other appellant, Harriett E. McNeal, held a mortgage and was named as mortgagee in the policy. It appears that fire had destroyed another building, which Pilgrim claimed was an addition and adjoining and communicating with the building described in the policy, and this action was for the purpose of having the court declare that the destroyed building was not covered by the policy in question. Federal took the position that the building destroyed was a separate insurable building and not an addition covered by the policy issued by it. The case was submitted upon an agreed statement of facts and an opinion was filed by Honorable Harry Watkins, District Judge (50 F.Supp. 577), holding that the insurance policy did not cover the destroyed building.

Since the case turns almost entirely upon the description and language of the policy as applied to the physical construction and situation of the building, it is important that a clear understanding be had as to the exact facts. These were fully shown to this court, not only by the excellent opinion of the trial judge, but by diagrams and photographs, which were before the District Court as exhibits and were sent up and exhibited to the appellate court when the case was called for oral argument.

It appears that Pilgrim owned two buildings in Huntington, West Virginia, both of which were used and usable in its business. There was a concrete block building, partly one, and partly two, stories in height, which was the larger building, and situated on the corner of Sixteenth Street and Eleventh Avenue. This building fronted on 16th Street and was 175 feet long and 60 feet wide, and was the front and main building wherein was situate the major portion of the business activities of Pilgrim. There was a smaller building to the rear, which was one story in height and constructed partly of frame and partly of concrete blocks. It was approximately 92 feet long and 70 feet wide. This building was situate to the rear of the larger building above described and fronted on Eleventh Avenue. This last named building contained the steam boilers, gas engines for generating electricity, and was also used for storage of supplies and materials and delivery

trucks. The two buildings were separated by a private alley, which was 10 feet in width. Each building had doors opening on this alley facing each other and the buildings were connected by water and steam pipes, electric lines and a gas line running from one building to the other across the alley; and in addition a water storage tank was supported by steel beams which had been placed across this alley the ends resting on the two buildings. However, none of these pipe lines or structures interfered with travel through the alley-way which was used for driving in and out of trucks or other vehicles. It is quite clear from the descriptions of these properties and the photographs and plats that they were two separate and distinct buildings and that the connections above referred to were made and used for the convenience of the business operations. The larger building fronting on Sixteenth Street contained all the machinery and offices of the plant. The smaller building to the rear contained the boilers and engines for furnishing power, light and heat, and it was also used for storage and garage purposes.

There were several different insurance policies issued by Federal and another insurance company. The policy, which is the subject matter of this suit, was issued by Federal under date of April 1, 1942, in the sum of $15,000, running for a term of one year, the premiums to be at the rate of $0.63 per $100, covering the front building, which was therein described as follows: "On the one and two story, composition roof, concrete block building occupied for laundry purposes, situated on the northwest corner of Sixteenth Street and Eleventh Avenue, Huntington, West Virginia."

This description was typewritten in the printed form policy. Among other printed items in the policy and following the above typewritten description, was a provision that the word "building" as used in the policy should be construed as follows: "Building—On building and additions adjoining and communicating, including platforms, plumbing systems complete, fire extinguishing apparatus in the form of fixed and permanent equipment, electric wiring, stationary heating, lighting and ventilating systems, stationary scales, elevators and all other permanent fixtures of every description, belonging to and constituting a part of the building."

There were in effect at the time this policy was issued, two other insurance policies

issued to the appellants with similar mortgagee clauses.

One of these was dated July 21, 1941, and was issued by another company, namely, North River Insurance Company, in the amount of $2,000 at a premium rate of $0.994 per $100, on the rear building, which was therein described as follows: "On one story concrete and frame building, with composition roof, and its additions adjoining and communicating, occupied as a boiler house and garage purposes, * * * and on all permanent fixtures therein or thereon, situated North side of Eleventh Avenue, between Fifteenth and Sixteenth Streets, Huntington, W. Va."

The other policy was for $4,000 and had been issued by Federal on February 18, 1942, insuring the contents or personal property contained in *both* buildings and the description of the property covered by such policy was as follows: "On their entire contents * * *, all while contained in two and one story, cement block, composition roof building, situated 1041–1045 Sixteenth Street, and in two and one story, concrete block and frame, metal and composition roof building, situated in rear of above described building, both in Huntington, Cabell County, West Virginia."

Both of these policies contained the same printed language defining the word "building" as hereinbefore quoted from the policy, which is the subject matter of this suit.

On April 17, 1942, the rear building was destroyed by fire, the loss amounting to $5,555.58. The building in front was not damaged. There is no question but that the North River Insurance Company's policy covered the rear building. The question here is whether Federal's policy for $15,-000 covering the front building also covered the rear building because of the definition of "building" hereinbefore quoted, and whether the loss should be prorated against the two insurance companies. The North River Insurance Company was made a party defendant in the lower court, but did not appear or answer.

It will first be noted that in reading these policies it is clear that the North River policy purported to cover the rear building; the Federal policy, the subject matter of this suit, purported to cover the front building; and the Federal policy on the contents and personal property distinctly shows that it covered the personal property in both buildings. The question before us is whether these buildings are to be considered as separate entities, insured, or insurable, separately, or whether that part of the policy printed and hereinabove quoted construing the definition of building means that the rear or smaller building is an addition "adjoining and communicating" and is, therefore, to be considered as "belonging to and constituting a part of the building".

It is of course elementary that where a fire insurance policy is ambiguous it is to be construed against the maker thereof, namely, the insurance company, and liberally construed in favor of the party insured. If the intention of the parties is not clear and the rear building can reasonably be classified as an addition and constituting a part of the building described in the policy, the court will give the benefit of the doubt in accordance with the above rule of construction. However, the main thing to be considered is what was the true intent of the parties, and this may be deduced, not merely from the descriptions themselves and the physical characteristics of the building, but from other acts and transactions between the parties. Irrespective of any other rules of construction the real intent and agreement of the parties and what they intended and meant when they entered into the contract of insurance is what must govern the court in determining the respective liabilities.

This contract was made in West Virginia and we turn to the courts of that state for a settlement of its law. The Supreme Court of Appeals of West Virginia has well stated the doctrine above referred to: "In numerous cases, this Court has adopted and maintained as a cardinal rule of construction that clauses in insurance contracts should be construed liberally to the insured. (Citing numerous cases.) This rule of construction, cardinal as it is, should not be applied to contravene the intention of the parties. In all events, 'policies of insurance, like other contracts, must receive a reasonable interpretation consonant with the apparent object and plain intent of the parties.' Pt. 3, Syl., Kanawha Investment Co. v. Hartford Steam Boiler Inspection, etc., Co. supra." Thompson v. State Automobile Mut. Ins. Co., 122 W.Va. 551, 11 S.E.2d 849, 850.

The District Judge carefully considered the policies, the exhibits and the descriptions, and determined that the buildings were two separate and distinct structures; that each was an insurable entity,

and as a matter of fact, that separate policies had been issued by two different insurance companies, one on the front building and one on the rear building; and in addition a policy had been issued on the contents of the two buildings describing them as such. With this view we agree entirely. The insured applied for and obtained these respective insurance policies; the owner treated them as separate buildings and took out different policies in different amounts to cover the same. To hold that the rear building is merely an addition and a part of the front building would be to overlook common sense and common knowledge.

There is an additional reason given by the trial judge with which we also agree. The laws of the State of West Virginia require that "every fire insurance company or other insurer authorized to effect insurance against the risk of loss or damage by fire in this State shall maintain or be a member of a rating bureau." Code of West Virginia 1937, 33-4-11, Michie, Section 3370. Section 3372 of this Code provides that such rating bureau shall rate risks upon schedules or flat rates. It is common knowledge in the insurance world that schedule rating is done when an entire plant of several buildings or different types of property are covered by a blanket policy. The flat rate basis for premiums is fixing a rate for a separate unit. Section 3376 of the West Virginia Code prohibits unfair discrimination by insurance companies as to premium rates, and therefore, it would have been unlawful for the insurance companies to have charged different rates on the same building, and if it had been the intention of the parties that the policy, which is the subject matter of this suit, was to cover the two buildings its rate should have been fixed with that in mind. The policy on the front building contains the same language as to the construction of the word "building" that the policy on the rear building contains. Therefore, if the rear building was an addition to the front building the front building would be an addition to the rear building; and yet the rates paid on the policies covering these respective buildings were very far apart. The rate on the front building, which was naturally a better insurable risk than the rear building (because of the steam boilers, generators, etc., in the last named), was $0.63. The rate on the rear building was $0.994. The rate on the rear building was thus over 50% higher than the rate on the front building. It is reasonable to assume that the insurance companies operating under the law of the state had issued their policies in accordance with the rating bureau's directions and the rates fixed for buildings of this character. If there was any intention that the two policies were to cover the other building respectively, as additions, the rates should and would have been adjusted to cover the same and should, therefore, have been on the same basis on the two policies. They were widely different. The owner of the building knew this, it was familiar with the descriptions in the policies, it took advantage of and paid the different premium rates.

The appellants in their brief cited a large number of cases construing policies of insurance. We agree with them as to the general rule by which policies of insurance are to be construed and the liberality due to the insured. However, when the physical facts are so clear as they are in this case, and where the buildings are shown to be individual structures and the connections between them merely casual and for the convenience of operation, no artificial rule of construction is to over ride the clear facts and the clear language of the policies and the unanswerable basis of rating and fixing and payment of premiums.

In addition to its findings along the lines heretofore outlined, with which we fully agree, the District Judge expressed an opinion as to the definition of the phrase "belonging to and constituting a part of the building". It is entirely unnecessary to consider that portion of the opinion and we express no views thereon and this case is decided upon the grounds hereinabove set forth and expressly eliminating any consideration of this last mentioned portion of the lower court's opinion.

For the reasons hereinabove set forth, we are of the opinion that the decision of the District Court in rendering judgment for the appellee, Federal Insurance Company, was fully warranted and the case is, therefore, affirmed.