## CHARLESTON.

C. B. BOOHER v. FARMERS' MUTUAL FIRE ASSOCIATION OF WEST VIRGINIA.

Submitted September 12, 1922. Decided September 19, 1922.

1. INSURANCE—*Member of Fire Insurance Association Not in Default if Assessment Paid Within Time Prescribed From Delivery of Notice or From Presumed Receipt in Due Course of Mail.*

   Where the policy and by-laws of a mutual fire insurance association provide that payment of assessments shall be made by the member within sixty days from the delivery of the notice to him, "which notice may be delivered personally or by mail addressed to each member at the last post office address given as shown by the association's books or records," and upon failure of such member to pay such assessment within sixty days after delivery of said notice, then his insurance shall become null and void; a member will not be in default of payment until sixty days from the time he receives the notice, or, if mailed, from the time it would reach him by due course of mail. (p. 471.)

2.  SAME—*Doubtful Clauses in Insurance Contracts Construed in Favor of Insured.*

> Where doubts arise as to the proper construction of clauses in insurance contracts, that view of them should be adopted which is most favorable to the assured, and will prevent a forfeiture.  (p. 471.)

(MEREDITH, JUDGE, absent.)

Error to Circuit Court, Tyler County.

Action by C. B. Booher against the Farmers' Mutual Fire Association of West Virginia.  From a judgment for defendant, plaintiff brings error.

*Reversed and remanded.*

*Underwood & Moore,* for plaintiff in error.

*Boreman & Carter,* and *H. H. Rose,* for defendant in error.

LIVELY, JUDGE:

This action at law is upon an insurance policy issued by a mutual fire insurance association to the plaintiff.  The funds out of which fire losses were paid by the association were derived from assessments made upon its members at irregular intervals when fire losses occurred.

The association levied assessment No. 8, and notices thereof to its various members, including the plaintiff, were placed in envelopes addressed to the last post office address given, as shown by the books of the association, and deposited in the post office at Fairmont, West Virginia, on or about July 1, 1915.  The plaintiff, whose building was insured for $1,100.00, resided at Booher in Tyler County. The policy required payment of such assessments within sixty days after the delivery of notice thereof, and neglect or refusal to pay the same within sixty days after the delivery of the notice rendered the policy null and void at the end of said sixty days.

Plaintiff's building, on which he had taken out the insurance, was destroyed by fire on September 2, 1915, and the association refused to pay the loss on the ground that the policy had become null and void and the insurance forfeited at the time of the fire, for failure of the assured to

pay assessment No. 8, which was for $3.75, within sixty days after the time when the notice was deposited in the mail at Fairmont.

Upon the trial plaintiff attempted to prove that some time in the month of August, 1915, he had paid the amount of the assessment, the sum of $3.75. This contention was found against him by the jury, in answer to one of the interrogatories propounded and submitted before they retired to consider their verdict. It was the theory of the plaintiff that the sixty days in which he had to pay the assessment began to run from the day he actually received the notice through the mail, which he stated to be on the 6th day of July, 1915; whereas, it was the theory of the association that under the policy contract the sixty days began to run from the day on which the notice of assessment was mailed, and which it claimed to be July 1st. It seems that the jury had some trouble in arriving at its verdict; and when the jury was sent to its room for further consideration of its verdict one of the jurors propounded to the court the following question: ''I believe the question, as I remember it, would you consider the delivery of the notice to the plaintiff when it was delivered to the post office at Fairmont or when it was delivered to his post office box at Booher?'' The court replied: ''In reply, the court instructs you that the law relating to it would date from the date of the mailing and the sixty days would be from that,'' to which ruling of the court the plaintiff objected and excepted.

The issue is sharply drawn. In conformity with the court's instruction, the jury returned a verdict for the defendant, and also found, in answer to interrogatory No. 2, that the association deposited the notice of assessment to the plaintiff at Fairmont not later than July 2d; and found, in answer to interrogatories Nos. 3 and 4, that the notice of assessment reached the post office and mail box of plaintiff on July 6th, and was received by him on that day. If the court's instruction, as above set out, is proper, then the verdict for the defendant cannot be disturbed.

The clause in the policy over the construction of which

the case turns is as follows: "The Secretary shall notify each member of the association by written or printed notice signed by him, stating the amount due the Association from the member and the time and place to whom it shall be paid, such payment shall be made by the member within sixty days from the delivery of the notice, which notice may be delivered personally or by mail addressed to each member at the last post office address given as shown by the Association's books or records.

"In event any member of the Association shall neglect or refuse to pay over to the secretary the full amount of said assessments and calls within said sixty days after the delivery of said notice, the secretary is hereby authorized to proceed to collect the same in the name of the Association, together with the resulting damages, including a reasonable attorney's fee, upon his premium obligation or otherwise and any member neglecting or refusing to pay such assessments calls within sixty days after the delivery of said notice so to do as aforesaid, then his insurance in the Association shall become null and void at the end of said sixty days, and shall so remain null and void thereafter until the insured shall fully pay the Association all assessments and calls, interest and attorney's fees due the Association when, upon the payment of the same, his said insurance shall again become in full force and effect unless ordered cancelled by the board of directors."

This case turns upon a proper construction of this clause of the policy with reference to giving notice of assessments and payment thereof within sixty days. Does a proper construction of this clause mean that the sixty days in which the assured is given for the payment of his assessment date (1) from the time the notice was placed in the post office at Fairmont; (2) when it actually reached the plaintiff on July 6th; (3) or when it should have reached him at his postoffice at Booher in due course of mail? It will be observed that the secretary is required to notify each member of the amount of the assessment and the time and place to whom it should be paid, which notice may be delivered per-

sonally, or by. mail addressed to each member at his proper post· office address. It will be observed also ·that the clause does not say in specific terms that the delivery.of the notice to ·the .post office, the placing of the notice in the post office, shall be considered as service of the notice. It is susceptible of the construction that the delivery to the post office is the method by which the parties agreed that the notice should eventually be received by the assured. It is susceptible of ·the construction that the mail is to be used as a medium by which the member shall be notified, just as if the notice had been delivered to some agent or carrier of the Association, such as a messenger boy, for delivery to the assured. If the notice was placed in the .hand of some agent for service, it could not be reasonably inferred that this act would complete the delivery of the notice and cause the running of the sixty days time to begin from that date, unless there was a specific stipulation that the placing of a notice in the hands of an agent should be equivalent to service from that time. This is a mutual association, and it is presumed that all the members should be treated alike, all accorded the same advantages. If this clause be construed to mean that the time of service shall be as of the day when the notice is deposited in the mail then it is apparent that those members who live a long distance from the office where notice is mailed, and possibly in the rural districts where mails are infrequent, would not have the same time for the payment of assessments as those members who live in the same town or in the immediate vicinity where the notice was mailed. It is not to be intimated that if such clear and convincing words were used in the policy contract as would impel the conclusion that the depositing of the notice in the mails constituted service or delivery to the assured, the running of the sixty days to be computed from that time, then the parties could not make such a contract even though it would in effect discriminate against those members remotely situated. It is simply a matter of contract, and the parties should be left free to make such contract as they saw fit, whether discriminatory or not. What we are trying to impress is that the

contract which is before us is susceptible of different constructions. The Association was providing for the delivery of notice of assessments, notification to the members, and the contract says that if the member refuses or fails to pay the assessment within sixty days after the "delivery of said notice" his insurance shall be forfeited. Is it clear that this delivery of the notice means a delivery to the post office; or does it mean delivery to the member, using the mails as a medium of its conveyance? The record discloses that the Association realized that this clause providing for delivery of the notice was reasonably susceptible of different interpretations, for even before this fire occurred it had given notice to its members that this part of the by-laws and policy contract would be changed so as to make it clear that the placing of notices in the mail should be equivalent to service as of that date, and in the month of December following this loss, the by-laws and policy were changed in this regard, so that from the date of this change, the clause is so plain that no interpretation or construction is needed.

It is well settled law that where doubts arise as to the proper construction of clauses in insurance contracts, that view of them must be adopted which is most favorable to the assured, and which will prevent a forfeiture of his rights under the policy. Forfeitures are never favored by the courts.

In the construction of similar clauses in insurance by-laws and policy contracts the courts have not been in accord. But a careful analysis of the decisions discloses that the differences are based on some peculiar wording in the by-laws or policy under consideration in each case. There are three classes of cases. One class holds that the delivery of the notice to the post office completes the service and that the limitation for payment begins from that time. However, decisions of this class are few, and we are cited to but two, and those are from the Supreme Court of Iowa, *Ross* v. *Hawkeye Ins. Co.,* 83 Ia. 586, 50 N. W. 47, and *McKenna* v. *State Ins. Co.,* 73 Ia. 453, 35 N. W. 519. We have been unable to find others of like import. Another class of cases

holds that the limitation of time for payment shall begin when the assured received notice, or should have received the notice in due course of mail. *Cronin* v. *Supreme Council Royal League,* 199 Ill. 228, 65 N. E. 323; *Northwestern Trav. Men's Asso.* v. *Schauss,* 51 Ill. App. 78, 35 N. E. 747; *Ferrenbach* v. *Mutual Reserve Fund Life Asso.,* 121 Fed. 945; *National Mutual Benefit Asso.* v. *Miller,* 85 Ky. 88, 2 S. W. 900; *U. S. Mutual Accident Asso.* v. *Mueller,* 37 N. E. 882; *Protection Life Ins. Co.* v. *Palmer,* 81 Ill. 88; *Sheldon* v. *National Masonic Ass'n.* (Mich.), 81 N. W. 266; 3 Cooley's Briefs on Insurance Laws, p. 2362. Another line of cases is to the effect that where the notice is mailed the member must have actually received the notice, and his time for payment begins to run from the day he receives it; but the decisions in these cases are based upon the peculiar provision of the by-laws which impels the conclusion that actual notice was to be received by the member before forfeiture can be had. Of this class of cases is *Castner* v. *Farmers' Mut. Fire Ins. Co.,* 50 Mich. 273, where the charter provided that the member was to be notified either by circular or verbal notice, and the by-laws required that "the secretary shall notify each member of the association by written or printed notice."

The case of *Ross* v. *Hawkeye Ins. Co., supra,* relied upon by counsel for the Association, is distinguishable from the case under consideration. In the Ross case the statute of the state of Iowa provided for notice to the insured by the company of the maturity of his premium note, and declares that "such notice may be *served* either personally or by registered letter addressed to the assured at his post office address named in or on the policy; and no policy of insurance shall be suspended for non-payment of such amount until thirty days after such notice has been served." The court decided that service was complete, and thirty days began to run, as soon as the letter was mailed as provided by law. The court said in its opinion: "It is service, and not notice, that gives rise to the operation of the statute." The by-law in the instant case (which simply incorporates the provisions of section 14 of chapter 55 of our Code) requires

that notice shall be given to the member and payment must be made within sixty days from the delivery of the notice, which notice may be delivered personally, or by mail addressed to each member at his last post office address given on the books of the Association. Delivery of the notice by mail under the Iowa statute was equivalent to service; but it cannot be said that delivery to the mails under our statute is equivalent to service of notice.

The construction placed upon similar clauses by the courts in the second class of cases above cited appeals to us as the most sensible construction of clauses of this character in insurance contracts, and we concur in that construction, following the well established rule by adopting that which is favorable to the assured. It follows that the construction given by the court in response to the question propounded by the juror is erroneous. Nor do we think that the instruction asked for by the plaintiff, to the effect that if the jury believe that the loss occurred ''before the expiration of sixty days from the day the notice of assessment was delivered to the plaintiff at his mail box'' should have been given. The day on which the notice would have reached the plaintiff in due course of mail was the time from which the sixty days should have been computed, and this should have been incorporated in the instruction.

It is argued for the Association that even if it should be held that the sixty days limitation begins to run from the time the notice should have been delivered to the assured in due course of mail, then the verdict and judgment should not be disturbed, because the notice was mailed, according to the evidence of the secretary, on the first day of July, and that by ordinary course of mail the letter should have reached the plaintiff's post office on the evening of the following day, and hence the fire occurred after sixty days from the 2d day of July, counting twenty-nine days in July and thirty-one in August, making the limitation expire two days before the fire occurred. But it is not clear that the ordinary course of mail would have consumed only two days from the time it was mailed until it should have reached

the post office of the assured. It appeared that a notice of this assessment which had been mailed, according to the secretary's testimony on the first day of July and which was addressed to a relative of the assured and to the same post office, was not postmarked at Fairmont until the 3d day of July; and this discrepancy between the time of the delivery to the post office and the time stamped thereon by the postal authorities at Fairmont when it was received (that is on the 3d day of July) is accounted for by the secretary by saying that the mails were often so congested at Fairmont by a delivery in bulk of several thousand of these notices that it was impossible for them to handle the same promptly on the ·day of receipt. It further appears that it often took longer than two days for the mail to go from Fairmont to the post office of the assured. Moreover, the jury found that the notice in question was mailed not later than the 2d day of July, and by following the rule for the· computation of time laid down by the statute, which excludes either the day of mailing or the day of receiving, and computing two days as the usual course of mail it would bring the fire within the sixty days. It will be observed also that the jury found that the time when the notice reached the post office of the plaintiff was on the 6th of July. We have been unable to discover on what evidence this finding was based.·

. On this state of the record we cannot say with any degree of certainty what would have been the verdict if the jury had been instructed that the computation of the sixty days should have begun from the time when the notice should have been received by the defendant in the due course of mail. We cannot say that the special finding that the notice of assessment reached the post office of the plaintiff on July 6th should have controlled the verdict. The verdict and judgment will be set aside and the case remanded for a new trial.

*Reversed and remanded.*