PAULINE COLLINS

*v.*

NEW YORK CASUALTY COMPANY

(CC 813)

Submitted April 28, 1954.   Decided June 1, 1954.

2

*Ernest E. Winters,* for plaintiff.

*Fitzpatrick, Marshall, Huddleston* and *Bolen, E. A. Marshall, Bert H. Early,* for defendant.

RILEY, JUDGE:

In this action of assumpsit, instituted in the Circuit Court of Cabell County by Pauline Collins against New York Casualty Company, a corporation, in which the plaintiff seeks to recover the principal sum of five thousand dollars, with interest thereon from June 11, 1948, until paid, upon an automobile public liability insurance policy issued by the defendant insurance company on an automobile owned by Don J. Fodal, the plaintiff bases the alleged liability of the defendant upon the omnibus clause of the policy, alleging in an amended declaration, the original declaration not being included in the record on this certificate, that one Clifford Stepp, operator of the Fodal automobile at the time it struck and injured the plaintiff, was an "additional insured" within the meaning of such clause.

The amended declaration incorporated parts of the evidence taken in a law action instituted by Pauline Collins against Clifford Stepp, the operator of the automobile, and Don J. Fodal, the owner thereof, to recover damages for personal injuries sustained by plaintiff by having been struck by the Fodal automobile, while being driven by Clifford Stepp, which, after a trial by jury, resulted in a judgment of *nihil capiat per breve* as to the defendant therein, Fodal, and against the other defendant therein, Clifford Stepp, upon which this action is based; and a transcript of parts of the evidence taken in a like action instituted by Jean Morrison against Fodal and Stepp, to recover damages for personal injuries alleged to have been incurred by the plaintiff therein at the same time and

place that plaintiff herein was injured, by reason of the Fodal automobile striking and injuring Jean Morrison, while being driven by Stepp.

Plaintiff's counsel in his brief bearing on this certificate states: "By agreement of counsel the declaration contains all facts so that the issue could be determined by the demurrer thereto." In their reply brief defendant's counsel state that the transcript of the record in the action of Collins against Fodal and Stepp was contained in plaintiff's original declaration, and that the agreement between counsel was that the original declaration should contain a transcript of the record in the Collins action only. Be that as it may, the agreement is not contained in the record now before us on this certificate, and, as hereinabove stated, the amended declaration incorporates the record in both the Collins and Morrison actions, the transcript in the latter of which actions, defendant's counsel in their reply brief state, was included in the pleadings for the first time without any agreement of counsel. Defendant's counsel filed a written motion that the trial court strike from the amended declaration the portion of the transcript in the action of Morrison against Fodal and Stepp. Likewise the defendant filed a written demurrer to plaintiff's amended declaration, which set forth as the only ground in support thereof that it appears upon the face of the amended declaration that Clifford Stepp was not· at the time he struck the plaintiff, Pauline Collins, while operating the Fodal automobile, an "insured" within the terms of the automobile public liability insurance policy issued to the named insured, Don J. Fodal.

The trial court overruled the defendant's written motion to strike, and, holding that Clifford Stepp was an insured under the terms of the policy, overruled defendant's demurrer to the amended declaration, and certified to this Court the following rulings: "(1) Whether the defendant's written motion to strike should be sustained or overruled"; and "(2) Whether Clifford Stepp was or was not an 'insured' under the terms of the automobile liability insurance policy issued to Don J. Fodal?"

As defendant's written motion to strike was directed solely to the transcript of the record in the action of Morrison against Fodal and Stepp, the trial court's ruling was necessarily limited to the question raised by the motion to strike, and on this certificate we shall in considering the motion to strike consider only the propriety of the incorporation in the amended declaration of the transcript of the evidence in the action of Morrison against Fodal and Stepp.

The amended declaration alleges that on October 25, 1947, while the policy of public liability insurance on which this action in assumpsit is based was in full force and effect, the plaintiff, Pauline Collins, was seriously injured by being struck by the automobile owned by Don J. Fodal, embraced in the policy of insurance, while such automobile was being carelessly, recklessly, negligently and unlawfully operated in the City of Huntington, Cabell County, by Clifford Stepp, who allegedly at the time and place plaintiff was injured was operating the automobile "with the permission" of Fodal.

The amended declaration further alleges that in the law action of Collins against Stepp and Fodal, judgment was obtained against Stepp alone; that Stepp is insolvent and unable to pay the judgment; and that plaintiff has been unable to collect the judgment by execution and that no part of the judgment or costs has been paid.

The pertinent provisions of the policy upon which this action is based are:

"Coverage A-Bodily Injury Liability

"All sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons caused by accident and arising out of the ownership, maintenance or use of the automobile."

"Definition of 'Insured'

"The unqualified word 'insured' (whenever

used in Coverages A and B., and in other parts of this policy, when applicable to such coverages) includes the named insured and, except where specifically stated to the contrary, also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided that the actual use of the automobile is with the permission of the named insured."

From the transcript of the evidence in the case of Collins against Fodal and Stepp, incorporated in the amended declaration, it appears that Don J. Fodal, owner of the automobile insured by the defendant, lived with his wife and child in an apartment building on West Fifth Avenue in the City of Huntington; that about six o'clock in the evening of October 25, 1947, the day on which plaintiff was injured, Clifford Stepp came to the Fodal apartment and asked for the use of the Fodal automobile, the automobile embraced in the public liability policy, to drive "uptown" to collect money from "somebody who owed him"; that Fodal loaned Stepp his automobile with the understanding that Stepp would use it only to drive "uptown" to collect a debt and then return immediately; and that Stepp promised Fodal that he would return with the automobile "in an hour or less." From the transcript of the evidence in the Collins case it further appears that when Stepp had borrowed the Fodal automobile on prior occasions, he had always returned it promptly; that Stepp was sober at the time he borrowed the Fodal automobile; that never before the night on which plaintiff was injured had Stepp been arrested for driving while intoxicated; and that Fodal had personal knowledge that Stepp held a West Virginia Motor Vehicle operator's license. It further appears from the transcript of the evidence in the case of Collins against Fodal and Stepp that the automobile not having been returned about four hours after it had been borrowed, Fodal went to the police station in the City of Huntington to inquire whether the department had received any reports concerning the vehicle, and if so to ascertain what might be done to get his automobile back. Upon being

informed that the police would have the automobile "picked up", if Fodal would sign a warrant, Fodal did nothing further about the matter.

From the transcript of the evidence in the Collins case it appears that Stepp was unable to locate the person who owed him the money he sought to collect; that he met and drove a friend in the Fodal automobile to an establishment outside the City of Huntington on United States Route No. 60, where he began to drink beer; that late in the evening he started back to Huntington and at his friend's request drove over to Sixteenth Street, where at the intersection of Sixteenth Street and Artisan Avenue in the City of Huntington the Fodal automobile, which he was driving, struck and injured the plaintiff; that thereafter Stepp was arrested for being intoxicated at the place where plaintiff was injured, which was approximately eleven-forty that night, more than five and a half hours after Stepp had borrowed the automobile from Fodal and had promised to return it "in an hour or less."

Addressing ourselves initially to the ruling of the trial court in overruling the defendant's motion to strike the transcript of the evidence in the action of Morrison against Fodal and Stepp, we note that a motion to strike is appropriate where the defendant seeks to have eliminated from the declaration an objectionable part thereof. *Pritt v. West Virginia Northern Railroad Co.*, 132 W. Va. 184, 189, 51 S. E. 2d 105, 111. Thus it has been held that mere surplusage in a pleading cannot be dealt with on demurrer, but may appropriately be deleted from the pleading by a motion to strike the allegations constituting the surplusage. *Bradfield, Admr.* v. *Board of Education of Pleasants County*, 128 W. Va. 228, 236, 36 S. E. 2d 512, 517. Though the matters contained in the transcript of the evidence in the Morrison case incorporated in the amended declaration involved the same alleged negligent act on the part of Stepp, the operator of the Fodal automobile, the action at bar is based solely upon the judgment which the plaintiff, Pauline Collins, obtained against

Stepp, which the plaintiff has been unable to enforce by collection from the judgment creditor; and the transcript of the evidence in the Morrison case involves matters entirely extraneous to the question in issue in the instant case. Section 14, Chapter 61, Acts of the Legislature, Regular Session, 1935, incorporated in Michie's West Virginia Code, 1949, Anno., Chapter 17, Article 20, Section 14, commonly known as the "Motor Vehicle Financial Responsibility Law", provides, in part, that: "Every such motor vehicle liability policy and every such operator's policy shall be subject to the following provisions, whether or not contained therein:

> "(a) The liability of the insurance carrier under any such policy shall become absolute whenever loss or damage covered by such policy occurs, and the satisfaction by the insured of a final judgment for such loss or damage shall not be a condition precedent to the right or obligation of the carrier to make payments on account of such loss or damage: * * *."

If the defendant casualty company is under any liability in this action at law, it is on the theory that the plaintiff alone suffered loss or damage, that is injury, for which the casualty company would be liable, if at all, under the terms of the policy, on the basis that the operator of the Fodal automobile at the time the plaintiff was injured was an "additional insured" under the omnibus clause of the policy. So clearly the question whether the casualty company is liable for the alleged injuries incurred by Jean Morrison, plaintiff in the other action, does not bear upon the liability in the instant action.

It is asserted in defendant's reply brief that at least that part of the Morrison case which contains Stepp's testimony that: "In the meantime I came back and went to see the fellow that owed me the money and I was going to go home right after that. On the way out there is when the accident happened", is squarely in conflict with that part of Stepp's testimony in the Collins case that "so coming back he [Stepp's companion] decided he wanted to go out Sixteenth Street and we started out Sixteenth Street". Thus it is contended that the pleading is inconsistent in

itself, and is therefore bad on defendant's demurrer. See Burks Pleadings and Practice, 3d Ed., 1934, Section 518, page 942.

The matters contained in the transcript of the evidence in the Morrison case not being germane to the issue whether the casualty company is liable to the plaintiff on the basis that under the allegations of plaintiff's amended declaration, Stepp, the operator of the Fodal automobile, was an "additional insured" under the policy, defendant's motion to strike from the amended declaration the transcript in the Morrison case is appropriate, and should have been sustained by the trial court. In *Pritt* v. *West Virginia Northern Railroad Co.*, 132 W. Va. 184, 190, 51 S. E. 2d 105, 111, this Court, asserting the postulate well established in the practice and procedure in this jurisdiction that "if the declaration stated one good cause of action, there was no error in overruling the demurrer to the whole declaration", suggested that "If the defendant desired to have eliminated from the declaration any part thereof, and particularly the parts mentioned in its demurrer, a motion to strike the same from the declaration should have been made." Defendant's motion to strike from the declaration the transcript in the Morrison case having been timely made, and being entirely appropriate, we are at liberty to consider the sufficiency of the declaration on defendant's demurrer as though such objectionable part thereof had not been incorporated in the amended declaration in the first instance. This serves to render moot the question raised by counsel for the defendant whether the transcript in the Morrison case is in part inconsistent with the transcript in the Collins case and the other allegations of the amended declaration so as to render the declaration inconsistent with itself, or repugnant, so as to render the amended declaration subject to the rule stated by Professor Burks in Section 518 that, "Again, if a pleading be inconsistent with itself, or *repugnant,* this is ground for demurrer."

This brings us directly to a consideration of the second certified question whether under the allegations of the

amended declaration, if the transcript of the evidence in the Morrison case were deleted, the amended declaration sufficiently alleges that at the time and in the circumstances that plaintiff was injured by the Fodal automobile while it was being operated by Stepp, the latter was an insured within the meaning of the omnibus clause of the policy. The pertinent provisions of the omnibus clause of the policy, under consideration on defendant's demurrer to the declaration, are: "The unqualified word 'insured' * * * includes any person while using the automobile and any person or organization legally responsible for the use thereof, *provided that the actual use of the automobile is with the permission of the named insured.*" (Italics supplied.)

The second certified question seems to be novel in this jurisdiction, and, in view of the many cases of other jurisdictions the decisions in which have been variant, most, if not all, of which, have been cited by counsel in their very helpful briefs, is not easy of solution.

Initially, it may be noted that the pertinent provisions of the omnibus clause contained in the public liability insurance policy, upon which this action is based and which are quoted *verbatim* in plaintiff's amended declaration, are in the general form for standard automobile combination policies prescribed by Departmental Ruling No. 349, dated November 10, 1947, promulgated by the Insurance Commissioner of West Virginia, under Code, 33-6-3, which authorizes the insurance commissioner to prescribe a general form for automobile insurance policies, and provides that "and all policies thereafter issued by such companies [insurance companies] shall conform to all such regulations prescribed by the insurance commissioner." The omnibus coverage in the standard form prescribed by the insurance commissioner under Departmental Ruling No. 349 is provided for in coverages A and B on page 3, Section I of the prescribed insuring agreements, and on page 4, Section III, the word "insured" is defined under "Definition of Insured", so that omnibus coverage as provided in the omnibus clause of the instant

policy is secured to the named insureds in automobile public liability policies.

Counsel for plaintiff, starting with the assumption that the pertinent provisions of the omnibus clause of the policy pleaded in the declaration are ambiguous, argue that the demurrer to the amended declaration should be overruled upon the basic postulate that ambiguous terms of an insurance policy are to be liberally construed in favor of the insured and cite: 10 M. J., Insurance, Section 25; 29 Am. Jur., Insurance, Sections 166, 167; *Thompson* v. *State Auto Mutual Insurance Company,* 122 W. Va. 551, 11 S. E. 2d 849; *Copen* v. *National Ben Franklin Insurance Company,* 107 W. Va. 608, 149 S. E. 830; *Downey* v. *National Fire Insurance Company,* 77 W. Va. 386, 87 S. E. 487; *Booher* v. *Farmers' Mutual Fire Ass'n of W. Va.,* 91 W. Va. 468, 113 S. E. 754; *Bowling* v. *Continental Insurance Company* 86 W. Va. 164, 103 S. E. 285, 17 A. L. R. 376; *Shinn* v. *West Virginia Insurance Company,* 104 W. Va. 353, 140 S. E. 61; *Beard* v. *Indemnity Insurance Company,* 65 W. Va. 283, 64 S. E. 119; *Chitwood* v. *Farm Bureau Mutual Auto Insurance Co.,* 117 W. Va. 797, 188 S. E. 493; and *Votaw* v. *Farmers Insurance etc.,* (Cal.) 97 P. 2d 958. Though the many divergent decisions of the courts in other jurisdictions might indicate that the provisions of the omnibus clause of the policy pleaded in the amended declaration are ambiguous, the words of the pertinent provisions of the instant omnibus clause, considered in their ordinary sense, do not create an ambiguity, and the clause being based upon Departmental Ruling No. 349 of the Insurance Commissioner of West Virginia, having been promulgated under Code, 33-6-3, it is our duty to apply and not construe the clause. In *State* v. *Patachas,* 96 W. Va. 203, 122 S. E. 545, this Court held in point 3 of the syllabus that: "Where the language of a statute is free from ambiguity and the intent is plain, there is no occasion for interpretation by a court, 'It is not allowable to interpret what has no need of interpretation'." See also *Appalachian Electric Power Co.* v. *Koontz,* 138 W. Va. 84, 76 S. E. 2d 863; *Cawley* v. *Firemen's Pension or Relief Fund of City of Beckley,* 138 W. Va. 571, 76 S. E. 2d 683; and pt.

2 syl., *David Parsons* v. *William C. Marland, Governor, etc., et al.,* 140 W. Va. 20, 82 S. E. 2d 183, decided at this term of Court.

Because the purpose of an omnibus clause in an automobile public liability insurance policy is not to limit the insurer's liability, but to provide additional coverage, the clause is designed to protect not only those entrusted with the use of the automobile, but the public in general, and therefore the provisions of the clause should be liberally applied to effectuate the purpose for which it was incorporated in the policy. For, in the final analysis, as a public liability insurance policy is for the protection of the insured and such additional insureds as are embraced in the omnibus clause, this Court in the application, as well as in the construction of a contract of insurance should "give effect to the intent of the parties and to their clear objective, if such intent or objective can be gathered from the policy." 7 Appleman, Insurance Law and Practice, 1942 Ed., Section 7481. Especially is this true in the case of the instant policy, where the omnibus clause is in the form prescribed by the insurance commissioner under a ruling promulgated under the statute.

That at the time Stepp was using and operating the Fodal automobile, he was a bailee under the allegations of the amended declaration, and as such was a "person * * * legally responsible for the use" of the Fodal automobile, and subject to liability to the owner in the event that, through negligence, he failed to return the automobile to the owner. See generally *Prettyman* v. *Hopkins,* 139 W. Va. 711, 81 S. E. 2d 78, involving a bailment for hire, in which the case of *Windom* v. *Boundy,* 94 W. Va. 551, 119 S. E. 804, was considered and appraised, which latter case involved a gratutious bailment for the sole benefit of the bailee, which is the kind of bailment under which, the declaration alleges, Stepp was using the Fodal automobile.

The proviso contained in the omnibus clause of the instant policy, "provided that the actual use of the automobile is with the permission of the named insured" is

one of qualification or limitation. Its application to the matters alleged in the amended declaration is determinative of the second certified question. The words "actual use" employed in the policy involved in this action are of modern innovation. In the older policies the word "use" or "operation", for which the named insured must give permission in order to make the one using the automobile an additional insured or an additional assured, was without any qualifying words. Thus in the leading case of *Stovall* v. *New York Indemnity Company*, 157 Tenn. 301, 8 S. W. 2d 473, 72 A. L. R. 1368, the decision in which represents the so-called liberal or minority rule, in which the policy of insurance under consideration defined the term "additional assureds" as follows: "* * * (b) any person, firm, or corporation legally responsible for the operation thereof [the insured automobile] providing such use or operation is with the permission of the named assured * * * ", the Tennessee Supreme Court defined the clause to include in the protection of the policy a person who takes an automobile with the owner's permission in the first instance, and thereafter makes use of the automobile for purposes of his own, though the automobile is driven to a place or for a purpose not within the contemplation of the owner, when the owner parted with possession of the automobile.

Evidently the term "actual use" was employed in later policies for the purpose of confining the coverage to the use of the automobile at the time loss or damage to a third person was caused by the operation thereof "within the scope of the permission granted." 7 Appleman, Insurance Law and Practice, 1942 Ed., Section 4354, citing *Johnson* v. *Maryland Casualty Co.*, D. C. Wis., 1940, 34 F. Supp. 870, and *Laroche* v. *Farm Bureau Mutual Automobile Ins. Co.*, 335 Pa. 478, 7 A. 2d 361. See also *Haeuser* v. *Hebert and Aetna Casualty & Surety Co.*, La. App., 185 So. 493. In the *Laroche* case the Supreme Court of Pennsylvania suggested that a "particular" use would be a better term than "actual" use; but applying the word "permission" in the omnibus clause of the policy under consideration in that case, the Court held that the case

14

was controlled by and turned upon the terms of the permission granted, and, reversing the judgment on a verdict in favor of the plaintiff and rendering judgment for defendant, held that the insurer was not liable where the insured's brother obtained permission to use the insured automobile to go to a named city and, after returning therefrom, drove the automobile for a different purpose on a trip in the opposite direction, during which time plaintiff was injured. In *Haeuser* v. *Hebert and Aetna Casualty & Surety Co.*, supra, the Court of Appeal of Louisiana affirmed a judgment against the individual defendant, Walter Hebert, alone, and stressing the word "actual" qualifying the word "use" in the omnibus clause of the policy held that where an automobile public liability insurance policy provided that the word "insured" includes any person using the automobile, if the use was with the permission of the named insured and the form of the policy was subsequently changed by inserting the word "actual" before the word "use", the word "actual" was inserted for the purpose of limiting the coverage to the situation in which the particular use to which the automobile was being put, which was the use contemplated by the insured when the permission to use the automobile was granted. In that case the named insured directed his chauffeur to take the insured's automobile from the owner's place of business to his residence and install it in a garage; but the chauffeur proceeded to take his friends for a drive, and the Court of Appeal of Louisiana held that such use of the automobile by the chauffeur was not "actual use" as authorized by the insured within the omnibus clause of the policy, and hence the insured was not liable for the chauffeur's negligence. On rehearing in the same case, however, the same Court, Judge Westerfield writing the opinion on rehearing, to which the Judge who had written the opinion on the first hearing dissented, applied the liberality rule applicable in the consideration of omnibus clauses in contracts of automobile public liability insurance, and held that the use of the insured's automobile by the insured's chauffeur to take the chauffeur's friends for a drive, after having been directed to take the automobile to the insured's

garage, was "actual use" within the meaning of the omnibus clause of the policy, thus rendering the insurer liable for injuries to a third party, and that the quoted words "actual use" were not confined to the use contemplated within the scope of the permission granted by the insured. The Court of Appeal of Louisiana thus held that the qualifying word "actual" was of no moment in limiting the use of the insured car by one having permission in the first instance to use it for a specific purpose. In so holding the Court, relying upon the case of *Parks* v. *Hall,* 189 La. 849, 850, 181 So. 191, 194, in which the word "use" in the omnibus clause of the policy under consideration was qualified by the word "actual", and in which the Supreme Court of Louisiana held that, under the automobile public liability policy covering the operation of an automobile by any person "with permission of the assured", use of the automobile by the owner's chauffeur after the chauffeur had been given permission by the assured to use the automobile for specific purposes, was with the "permission of the assured" within the meaning of the policy, and, therefore, the insurer was liable for the chauffeur's negligence while using the automobile for his personal purposes.

But see *Johnson* v. *Maryland Casualty Co., supra,* in which the United States District Court for the Western District of Wisconsin said at pages 871 and 872, "Actual use means the use to which the automobile is being put at the time of the collision with the permission of the named insured. It can mean nothing else."

We have the greatest respect for the views of the distinguished writer of Appleman, Insurance Law and Practice, but nevertheless we think that the qualifying word "actual" before the word "use" in the omnibus clause of the instant policy is ineptly used, and throws little light upon the application of the omnibus clause in the policy to the facts in the case. The words "with the permission of the insured", in our opinion, are controlling. Certainly the word "permission" of itself has a definite meaning. It has been defined in Black's Law Dict., 4th ed.

1298, as "A license to do a thing; an authority to do an act which, without such authority, would have been unlawful"; and in Webster's New International Dict., Second Edition, Unabridged, 1824, the word is defined as an "Act of permitting; formal consent; authorization; leave; license or liberty granted." The very definition of the word "permission" implies its application variously to the things permitted to be done by the person granting the permission, so that inherently the words "with the permission of the insured" in the omnibus clause of the instant policy suggest that the scope of the permission is that which the parties intended. As succinctly stated in 45 C. J. S., Insurance, Section 827: "The scope of liability insurance with respect to the particular liabilities or losses covered is determined by the intention of the parties as expressed in the policy; and liabilities or losses not contemplated by the parties are not covered by the policy." This postulate applies not only to the case of an insurance policy as a whole, but to the parts thereof such as the omnibus clause contained in the automobile public liability insurance policy under consideration.

As the exact question before us is novel in this jurisdiction, and the decisions in other jurisdictions bearing on the immediate question are numerous and variant, it would serve no useful purpose to collate in this opinion the authorities cited in the briefs of counsel for plaintiff and defendant. Such collation of authorities would only extend this opinion to an unnecessary length.

Exhaustive collations of authority, bearing on the question, are to be found in the annotations in American Law Reports to the cases of: *Stovall* v. *New York Indemnity Co.*, 157 Tenn. 301, 8 S. W. 2d 473, 72 A. L. R. 1368, anno. 1375 to 1435, incl.; *MacBey* v. *Hartford Accident & Indemnity Co.*, (Mass.) 197 N. E. 516, 106 A. L. R. 1248, anno., 1251 to 1270, incl.; *Votaw* v. *Farmers Automobile Inter-Insurance Exchange*, (Cal.), 97 P. 2d 958, 126 A. L. R. 538, anno., 544 to 558, incl.; and *State Farm Mutual Automobile Insurance Co.* v. *Cook*, 186 Va. 658, 43 S. E. 2d 863, 5 A. L. R. 2d 594, anno., 600 to 668, incl.

For illuminating discussions of the question as to who is an additional insured under the provisions of an omnibus or extended coverage clause in an automobile public liability insurance policy, amply supported by cited authority, see 7 Appleman, Insurance Law and Practice, 1942 Ed., Section 4354; 45 C. J. S., Insurance, Section 829; 5 Am. Jur., Automobiles, Sections 532 to 543, incl. An examination of these authorities discloses that the courts of other jurisdictions generally have relied upon the use of the words "with the permission of the insured." As stated by the annotator in 5 A. L. R. 2d 600 to 668, incl., at page 607: "Without voicing any opinion as to the effect in general of the change in the omnibus clause from the term 'use' to 'actual use', the writer of this annotation submits that, so far as the question discussed in this annotation is concerned [automobile liability insurance: permission or consent to employee's use of car within meaning of omnibus coverage clause], the courts have not attributed much importance thereto so far, since no case has been found in which the result has turned upon a distinction of the two terms." Though in the instant case Stepp was not Fodal's employee, the annotator's statement seems to apply with equal force to a case where one, who is not an employee of the insured, operates an insured's automobile, having the permission of the insured to use the automobile in the first instance, in which liability is sought against the insurance company on the basis that the operator of the insured automobile was an additional insured under the omnibus clause of the policy.

An examination of the authorities cited in the briefs of counsel and the annotations and texts heretofore cited clearly shows that the great weight of authority is to the effect that apart from slight deviations from the authorized use of an insured automobile by a nonemployee of the insured, which will not operate to prevent coverage under such omnibus clause, the use of the automobile beyond the scope of the permission granted in the first instance, either expressly or by implication, serves to relieve the insurer

from liability for the negligent use of the automobile causing the injury or damage to a third person.

From the cases which involve gross and slight deviations from the purpose and use of an insured automobile, for which permission in the first instance has been granted by the insured, three separate rules have evolved: (1) Those cases holding that any deviation from the permission of the insured as initially given, no matter how slight, will defeat liability under the policy; (2) those cases holding that permission once given will extend to all uses of the automobile, though the automobile may be used for a purpose and at a time and place not contemplated by the insured when the permission to use the automobile was granted; and (3) those cases which hold that a slight deviation does not violate the omnibus or extended coverage clause of an automobile public liability insurance policy. Thus the adjudicated cases may be classified, and such was the classification adopted by the Supreme Court of Oklahoma in the case of *Lloyds America* v. *Tinkelpaugh,* 184 Okla. 413, 414, 88 P. 2d 356, 357, 5 NCCA NS 1.

As the question before us has not been decided in this jurisdiction, we may without violating the rule of *stare decisis* adopt any one of the three rules hereinabove mentioned. The first rule that deviations from the permission of an insured initially given, no matter how slight, will defeat liability under the policy, may be denominated the "strict rule"; the second rule that permission once given will extend to all uses of the automobile, though the automobile may be used for purposes not contemplated by an insured, and at a time and place not contemplated by an insured when the permission to use the automobile was granted, may be called, and usually is in the cases and texts, the "liberal rule"; and the third rule that a slight deviation does not violate the omnibus or extended coverage clause of an automobile public liability insurance clause is the rule between the extremes of the first and second rules. Bearing in mind, however, that an automobile public liability insurance policy, like all insurance policies, should be liberally construed where am-

biguous, and liberally applied as to the unambiguous parts, in favor of the insured, we refrain from adopting the strict rule; nor are we persuaded to adopt the so-called liberal rule established in the case of *Stovall* v. *New York Indemnity Co.*, *supra*, in which the Tennessee Supreme Court held that the qualifying words contained in the automobile indemnity insurance policy under consideration " 'providing such use or operation is with the permission of the named assured'," provided coverage as an additional insured of a person using the insured automobile, having permission to use the automobile in the first instance for a specified purpose, though such person may use the automobile for purposes of his own, and the automobile is driven to a place or for a purpose not within the contemplation of the owner when he parted with possession of the automobile. Such rule if applied within its full scope would have in numerous cases in the future baneful results not contemplated by either the insurer or the insured. Under the extreme application of the rule in the *Stovall* case a person to whom an insured automobile was delivered, with permission to take it to a certain garage or a nearby place, would have insurance coverage if he drove the automobile without the permission or the knowledge of the owner on a trip to a distant city requiring many days. Such consideration of the strict and liberal rules leads us to adopt the rule adopted by the Supreme Court of Oklahoma in *Lloyds America* v. *Tinkelpaugh*, *supra*, Point 2 (by the Court) of the syllabus: "A slight deviation from the permissive use of a car will not annul the original grant of permission so as to relieve an insurance company from liability under an omnibus clause in an insurance policy which covers any person while using the automobile provided 'the actual use in each instance is with the permission of the named insured.' "

The slight deviation rule is based upon the premise that policies of insurance where ambiguous should be construed and where unambiguous should be applied to effectuate the intention of the parties; and where the deviation is such as was not contemplated by the insured and one to which in the first instance the insured would be presumed

not to have assented, the coverage afforded by the omnibus clause of the automobile public liability insurance policy terminates. Applying this principle to the instant case, we are of opinion that the insured, Fodal, having reluctantly in the first instance granted Stepp permission to use the automobile for a specified purpose with the understanding that it would be returned within an hour, could not be held to have assented to the use Stepp made of the automobile, that is, on a so-called "frolic of his own", which extended beyond the limits of the City of Huntington and more than four hours past the time within which he undertook to return the automobile to its owner.

For the foregoing reasons we answer the certified questions as follows: (1) The trial court erred in overruling the defendant's motion to strike from the declaration the transcript of the evidence in the case of Morrison v. Stepp and Fodal; and (2) the trial court erred in overruling the demurrer to plaintiff's amended declaration.

We therefore reverse the rulings of the Circuit Court of Cabell County in overruling defendant's motion to strike and in overruling defendant's demurrer to plaintiff's amended declaration.

*Rulings reversed.*