**UNITED STATES FIDELITY AND GUARANTY COMPANY, a corporation, Plaintiff,**

v.

**LANDERS CHEVROLET, INC., a corporation, and Bernie L. Bridgeman, Defendants,**

v.

**James N. SALYER, Jr., and Anna Lee Salyer, Third-Party Defendants.**

**Civ. A. No. 2460.**

United States District Court,
S. D. West Virginia,
Huntington Division.

March 20, 1970.

R. G. McNeer, Campbell, Woods, Bagley, McNeer & Herndon, Huntington, W.Va., for plaintiff.

No appearance for Landers Chevrolet, Inc., and Bernie L. Bridgeman.

E. G. Marshall, Marshall, Harshbarger & St. Clair, Huntington, W.Va., for third-party defendants.

CHRISTIE, District Judge:

This is a civil action for declaratory judgment filed under the provisions of Title 28, U.S.C., Section 2201. The action was originally brought by plaintiff United States Fidelity & Guaranty Company on June 28, 1968, when it filed a complaint naming Landers Chevrolet, Inc., and Bernie L. Bridgeman as co-defendants. Plaintiff seeks a declaration from this court that the liability insurance policy it had issued to the defendant Landers Chevrolet, Inc., does not cover any liability arising from an automobile accident that occurred on November 29, 1966, and further, that it is not bound to defend the defendant Bridgeman in any litigation growing out of that accident. Neither defendant has answered.

By order entered October 15, 1968, the case was set for hearing on October 25, 1968. At the direction of the Court, the Clerk served an attested copy of the order upon the defendant Landers Chevrolet, Inc., and its then apparent attorney, and upon the defendant Bridgeman. At the hearing neither defendant made an appearance and after hearing evidence the Court ruled the plaintiff entitled to the relief it sought. However, prior to the entry of a formal order to this effect, the Court received a motion by James N. Salyer, Jr. and Anna Lee Salyer to intervene as third-party defendants. Mr. Salyer was the driver and Mrs. Salyer was the owner of the other vehicle that collided with the one driven by Bridgeman. Mr. Salyer's claim is for personal injuries and Mrs. Salyer's claim is for property damage. The Court granted the motion by order entered November 21, 1968, and an evidentiary hearing was held on September 5, 1969, wherein certain testimony considered relevant was presented to the Court. Counsel for the parties have agreed to submit the case to the Court for determination upon the record as presently constituted (see appendix).

The issue for the Court to determine in this case, simply and narrowly drawn, is whether, under the circumstances hereinafter detailed, the insurance policy purchased by Landers Chevrolet provided coverage for the accident which occurred on November 29, 1966. The facts bearing upon this issue are essentially undisputed and are concisely stated below.

Bernie Bridgeman, an eighteen year old, had been employed by Landers Chevrolet as a "parts boy." While his primary duties appeared to be going about to various automotive supply houses in the region to pick up parts needed in the business operations of the garage and repair shop that Landers maintained, it also appears that he did certain other jobs in and about the business establishment. His employment as a parts boy required him to drive various company vehicles upon the public highways and the record is devoid of any evidence that would suggest that Bridgeman's driving skill and record, both on and off the job, were anything but competent and good. Among the other duties Bridgeman performed at Landers Chevrolet was the task assigned him to report for work early in the morning of a work day, at approximately 6:00 a.m., in order that he could remove snow that had fallen during the night from in and around the garage, repair shop and new-car showroom.

At quitting time on the evening of November 29, 1966, it was snowing heavily. On that evening Bridgeman was given a station wagon to drive home by a superior employee, which action was approved by the general manager. The admitted purpose of the assignment of the car to Bridgeman was to provide him with transportation for the following morning so he could be on the job by 6:00 a.m. to grade away the snow from

the premises.[1] It is, likewise, undisputed that upon leaving in the station wagon that evening young Bridgeman did not go directly home. Instead, he went to a nearby restaurant where he met several friends of his age. The group of young men left the restaurant together and, with Bridgeman driving the station wagon, proceeded to a roadside tavern some eight miles away. The young men were at the tavern long enough to drink "some beer" and play "some pool." At about 9:00 p.m., while returning home accompanied by his companions, Bridgeman collided with the Salyer vehicle.

The plaintiff urges us to find that Bridgeman at the time was upon such a frolic of his own that it is entitled to a non-coverage defense and cannot be held responsible for any judgment which might be rendered against Bridgeman for his actionable negligence. We perceive such a defense to be one of contract and, therefore, turn our attention to the liability insurance policy entered into between plaintiff and Landers Chevrolet.

Under the garage liability section of the insurance policy the following pertinent provisions are set forth:

"IV. PERSON INSURED

"Each of the following is an IN-SURED under this insurance to the extent set forth below:

"Under the Garage Bodily Injury and Property Damage Liability Coverages:

\* \* \* \* \* \*

(3) With respect to the automobile hazard:

(a) any person while using, with the permission of the Named In-sured, any automobile to which the insurance applies under the automobile hazard, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission \* \* \* ."

The "automobile hazard" referred to in (3) (a) above is defined as follows:

"(1) The ownership, maintenance or use (including loading and unloading) of any automobile for the purpose of garage operations, (2) the occasional use for other business purposes and the use for non-business purposes of any automobile owned by or in charge of the Named Insured and used principally in garage operations, and (3) *the ownership, maintenance or use of any automobile owned by the Named Insured while furnished for the use of any person.*" (Emphasis added).

This being a diversity action, under the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), we must look to West Virginia law to determine the proper interpretation to give to the quoted provisions of the policy. We perceive the West Virginia rule to be one of liberal construction of liability policies that are purchased for protection of the public. Collins v. New York Casualty Co., 140 W.Va. 1, 82 S.E.2d 288 (1954). Moreover, the highest court of that state has formulated the principle that the application, as well as the construction, of a contract of insurance should "give effect to the intent of the parties and to their clear objective, if such intent or objective can be gathered from the policy." Helvy v. Inland Mutual Insurance Company, 148 W.Va. 51, 132 S.E.2d 912, 920

---

1. We find this explanation for the reason the car was assigned to Bridgeman to be quite puzzling. The record clearly indicates that Bridgeman lived approximately three-quarters of a mile from his place of employment. His uncontradicted testimony is that his *usual* mode of transportation to and from work was by walking. Moreover, the superior employee that initially authorized the car for Bridgeman to take home that evening tes-tified that Bridgeman had asked him to take him home that evening and the superior employee had refused. The reason given for the refusal by this supervisor was that the roads were in such bad condition from the snow storm that no one should be on them. Then, after reaching this conclusion, he proceeded to authorize the station wagon for Bridgeman's use.

(1963). Our Fourth Circuit appears to be in general accord with this view, for in Utica Mutual Insurance Company v. Rollason, 246 F.2d 105 (1957), it is stated that a garage liability policy should be liberally interpreted to hold the insurance company liable if such interpretation does not do violence to the terms of the contract, and in Chatfield v. Farm Bureau Automobile Insurance Company, 208 F.2d 250, 256 (1953), the Court said that generally an "omnibus clause" in an automobile liability policy should not be construed literally, but instead "the spirit, not the letter" should be controlling.

With this general rule of interpretation in mind, we will now look to the factual question of whether or not Bridgeman had permission to use the vehicle and if so, whether or not he went beyond the "scope of such permission." The answer to the first question is quite simple, since there is exhibited in evidence a letter addressed to an adjusting firm written over the signature of the general manager and secretary of Landers Chevrolet, Inc., that establishes that Bridgeman did in fact have permission to use the vehicle on the occasion in question. We quote the letter:

> "This is to advise that our employee, Bernie Bridgeman, had permission to use the 1964 Chevelle Station Wagon which was involved in the accident on U. S. Route 60 West of Culloden, West Virginia, on the evening of November 29, 1966."

There is no evidence to the contrary. It being thus found that Bridgeman did have permission to use the station wagon, we will now explore and attempt to resolve the question of whether such use went beyond the "scope of permission" thus given.

 We assume that it would not be contested by anyone that the employer had the authority to grant permission for the use of its vehicles in any manner it saw fit. With this in mind, counsel's assertion that the actual use of the automobile was beyond the "scope of permission" envisioned by the employer is di-

rectly opposite the position taken by the employer. The letter quoted above was dated December 22, 1966, and was written some twenty-four days after the accident. Its terms indicate that the employer knew not only that permission to use the station wagon had been granted, but that permission to use it "on U. S. Route 60 West of Culloden" (highway where accident occurred) had been tacitly permitted, or acquiesced in, or at least no objection was made to such use. Bridgeman lived on Old Mill Road, an unpaved road near Hurricane. · Many cases have dealt with the subject of "implied permission," but we can find no better statement of what is necessary for its presence than the rule adopted by the Virginia Court in Hinton v. Indemnity Insurance Company, 175 Va. 205, 9 S.E.2d 279 (1940). In the *Hinton* case it was held that permission can be granted impliedly and this may be established by a course of conduct amounting to mutual acquiescence or lack of objection. This court, speaking through Judge Harry E. Watkins has expressed a similar view in Allstate Ins. Co. v. Merchants Hardware Company, 179 F. Supp. 590 (N.D.W.Va.1959). The West Virginia Court, in Collins v. New York Casualty Co., supra, accepting the "implied permission" concept, held that a further guideline to be employed in the factual determination of whether a person was operating a vehicle within the "scope of permission" granted was whether the deviation was beyond the contemplation of the insured and "to which in the first instance the insured would be presumed not to have assented, * * *." 82 S.E.2d at 299. We thus find no such deviation as would be violative of the scope of the permission granted or to be necessarily implied from the circumstances.

Moreover, in Lewis v. Dils Motor Company, 148 W.Va. 515, 135 S.E.2d 597 (1964), the West Virginia Court, construing a policy with provisions not materially dissimilar to those we are concerned with here, reached the conclusion that where permission is shown to

have been given and the permittee is an employee of the named insured, deviation alone does not defeat policy coverage. We quote point 5 of the syllabus of the *Lewis* case:

"An automobile liability insurance policy which includes in a definition of the word 'insured' any employee of the named insured while acting within the scope of his duties as such and any person while using an automobile covered by the policy, provided the actual use of the automobile is with the permission of the named insured, embraces within such definition and covers an employee of the named insured while actually using the automobile with the permission of the named insured, *whether such use be within or without the scope of his employment.*" (Emphasis added).

Therefore, since it is shown here that Bridgeman did have permission from Landers to use the station wagon on the occasion in question and since it is also shown that he was an employee of Landers, we have no difficulty in finding and concluding that, under West Virginia law, Bridgeman was an insured under the policy and covered by its garage liability provisions at the time of the collision with which we are concerned. Such finding, we believe, gives effect to the objective intent of the parties as evidenced by the terms of the policy and comports with applicable West Virginia law in such situations.

Since we have concluded that coverage is afforded Bridgeman by the garage liability provisions, the question of coverage under the comprehensive general provisions of the policy is mooted.

The intervenors assert that plaintiff is estopped to deny coverage in this case. While it is not necessary to inquire into this issue to reach the decision that we do, we want to point out that intervenors are third-party beneficiaries of the contract between the plaintiff and Landers Chevrolet. Estoppel is a method for enforcing a contract when a party to that contract has mate-rially changed his position to his detriment upon the actions or representations of the other party. The intervenors here have not shown such detriment.

This memorandum opinion shall constitute the Court's finding of facts and conclusions of law as provided by Rule 52 of the Federal Rules of Civil Procedure.

APPENDIX

By order entered October 8, 1969, the plaintiff and the intervenors, through and by their respective counsel, agreed to submit the issues of law and fact to the Court upon the record as it was then constituted.

By a later order, dated November 24, 1969, a summons issued 8–24–68 by the Clerk of the Circuit Court of Putnam County, West Virginia, in the case styled: James N. Salyers, Jr. and Anna Lee Salyers vs. Landers Chevrolet, Inc., a corporation, and Bernie L. Bridgeman, was made a part of the record, and by still a later order, entered December 30, 1969, the Court granted the joint motion of counsel that "certain provisions of the insurance policy attached to intervenors' brief be made a part of the record." Although the Court granted the motion, it is at a loss to understand its significance, since the entire policy was exhibited with plaintiff's complaint and was already a part of the record by the force of Rule 10(c). This order further provided, however, for the withdrawal by the plaintiff of its objection made at the September 5, 1969, hearing to the admission in evidence of the letter dated December 22, 1966, signed by Okey M. Landers, Jr., and for the withdrawal by the intervenors of their request previously made for a jury trial.

Thus, for the purpose of this decision, the Court will treat the following as constituting the record in this case:

(1) Plaintiff's complaint.

(2) Testimony of Russell Lewis Bowles, taken before the Court on October 25, 1968.

(3) Motion of James N. Salyer, Jr., and Anna Lee Salyer, with their counsel's affidavit attached, to intervene.

(4) Order granting Salyers' motion to intervene.

(5) Answer of James N. Salyer, Jr., and Anna Lee Salyer.

(6) Deposition testimony of Bernie L. Bridgeman, taken February 6, 1969.

(7) Deposition testimony of Okey M. Landers, taken February 6, 1969.

(8) Letter dated February 9, 1967, by Harry D. Bolen, Claims Adjuster, United States Fidelity & Guaranty Company.

(9) Letter dated December 22, 1966, from Okey M. Landers, Jr., to Security Insurance Group.

(10) Comprehensive General—Automobile Liability Insurance Policy No. ICC 24772, issued to Landers Chevrolet, Inc., attached to plaintiff's complaint.

(11) Stipulation by intervenors and plaintiff that by reason of the liability coverage in said policy of insurance, the plaintiff paid Carlton Lee McCallister, an infant guest passenger in the automobile owned by Landers Chevrolet, the sum of $2,000.00 for certain injuries sustained in the collision which gave rise to this suit, and for the purpose of this payment the plaintiff prosecuted and paid for a summary proceeding in the Circuit Court of Putnam County, West Virginia, styled: Violet L. McCallister, legal guardian of Carlton Lee McCallister, an infant vs. Carlton Lee McCallister, an infant, Civil Action 1560, concluded February 15, 1967.

(12) Summons issued by the Clerk of the Circuit Court of Putnam County on August 24, 1968, in Civil Action No. 1956, styled: James N. Salyers, Jr., and Anna Lee Salyers, plaintiffs v. Landers Chevrolet, Inc., a corporation, Hurricane, W.Va., Bernie L. Bridgeman, Hurricane, W.Va., defendants.

(13) Transcript of testimony of Don Lilly, Harry David Bolen and James N. Salyer, Jr., taken before the Court on September 5, 1969.